COMMONWEALTH vs. ALFRED J. HUNTER, THIRD.

Essex. December 7, 1993. - January 26, 1994.

Present: WILKINS, NOLAN, LYNCH, & GREANEY, JJ.

*Homicide. Practice, Criminal,* Voluntariness of statement, Psychiatric examination, Instructions to jury. *Evidence,* Hearsay, State of mind, Admissions and confessions.

In a murder case in which the sole issue at trial concerned the defendant's state of mind at the time of the killing, the judge committed error in denying the defendant a voir dire on the issue, properly raised, of the voluntariness of statements the defendant made to two civilian witnesses on the day of his arraignment in the District Court, from whence he had been committed, after an examination by a psychiatrist, to the Bridgewater State Hospital for a determination of his competence to stand trial. [833-835]

In the circumstances of a criminal case in which the defendant was ordered to submit to one examination by a psychiatrist, the judge committed error in admitting testimony on direct examination that the defendant had refused, on advice of counsel, to submit to a second examination. [835-836]

In a murder case in which there was evidence that the defendant shot the victim at least seven times within seconds at close range with a semi-automatic rifle after the victim had pleaded with the defendant not to shoot her, there was no error in the judge's submitting to the jury the issue of extreme atrocity or cruelty. [836]

In a murder case, the judge instructed the jury on the issue of extreme atrocity or cruelty inconsistently with the requirements of *Commonwealth* v. *Freiberg,* 405 Mass. 282, 289-290, cert. denied, 493 U.S. 940 (1989). [836-837]

At the trial of a murder indictment testimony of a witness's conversation with the victim was properly admitted to prove the victim's state of mind and the defendant's motive. [837]


INDICTMENT found and returned in the Superior Court Department on January 24, 1990.

The case was tried before *John L. Murphy, Jr.,* J.

*James L. Sultan* for the defendant.

*Elin H. Graydon*, Assistant District Attorney (*Brian T. O'Keefe*, Assistant District Attorney, with her) for the Commonwealth.

NOLAN, J. A jury convicted the defendant, Alfred J. Hunter, III, of murder in the first degree by reason of deliberate premeditation and extreme atrocity or cruelty.[1] Because we conclude that the trial judge committed reversible error when he failed to conduct a voir dire hearing on the voluntariness of Hunter's statements to two civilian witnesses, we reverse the murder conviction, and remand the case to the Superior Court for proceedings consistent with this opinion. In light of this decision, we need not address each of Hunter's arguments raised on appeal. We have chosen, however, to comment on certain issues which may occur at retrial.

At trial, there was no dispute that Hunter killed his estranged wife, on May 9, 1989, by shooting her repeatedly with a semi-automatic rifle. His defense was that, because he suffered from depression, he lacked the requisite mental state to commit the crime.

1. *Failure to conduct a voir dire hearing on the voluntariness of Hunter's statements to two civilian witnesses.* On the day of his arraignment, May 10, 1989, a District Court judge ordered that Hunter be examined by a court psychiatrist and to be further examined at Bridgewater State Hospital to determine his competency to stand trial and his criminal responsibility. On June 12, 1989, Hunter was found not competent to stand trial. Not until March 6, 1990, was Hunter found competent to stand trial.

Prior to trial, Hunter filed a motion for a voir dire on the voluntariness of statements that he allegedly made to fellow prisoners John Mallia, Jr., and Joseph Christoforo on May 10, 1989, the day of his arraignment. Hunter filed an affidavit in support of this motion, stating that any statements he

---

[1]Hunter was also convicted on two indictments charging assault by means of a dangerous weapon. He does not appeal from these convictions.

may have made were not voluntary because he was not mentally competent at the time, that Dr. David D. Swenson, the court psychiatrist who examined him on that date, had concluded that his mental competency was questionable, and that the judge had committed him to Bridgewater State Hospital.

At trial, prior to the testimony of Mallia and Christoforo, defense counsel asked to be heard on Hunter's pretrial motion. Counsel made an offer of proof that Dr. Swenson would testify that on May 10, 1989, Hunter was depressed, hopeless, and suicidal, and that Dr. Swenson had questioned Hunter's competency to stand trial. The judge denied the motion, stating that an evidentiary hearing was not necessary because the witnesses were civilians and that he would instruct the jury to decide whether the statements were voluntarily made based on all the evidence. Over defense objections, both John Mallia, Jr., and Joseph Christoforo testified. Mallia testified that, on May 10, 1989, he was transported in a van with Hunter from Salem District Court to Bridgewater State Hospital, and that during this trip, Hunter indicated that he had been very angry with his wife for taking him to court and making him sleep in his motor vehicle and that he had not been on drugs or alcohol at the time of the killing. Joseph Christoforo testified that, on May 10, 1989, he was in a holding cell in the lockup in the Salem District Court with Hunter and that Hunter told him that he had killed his wife because he had been very angry with her, that "he had shot her once in . . . each breast, once in the head, and once down in the crotch," and that he had done this because she had "cheated on him and kicked him out of the house." Dr. Swenson did not testify at trial.

Hunter argues that the judge erred by denying his motion for a voir dire hearing on the voluntariness of the statements that he made to Mallia and Christoforo. Hunter asserts that the judge's stated reason, that Mallia and Christoforo were civilian witnesses, is contrary to established law. Hunter also contends that he sufficiently raised this issue by submitting his affidavit with the motion for a voir dire, by making the

offer of proof concerning Dr. Swenson's expected testimony, and by being found not competent to stand trial. Further- more, Hunter contends that this error was not harmless be- cause Hunter's statements to Mallia and Christoforo related to Hunter's mental state at the time of the killing, the sole issue at trial, and the statements may have been found to be involuntary if a voir dire had been conducted. The Common- wealth claims that Hunter did not adequately raise the issue of voluntariness and, in any event, the evidence showed that the statements were voluntarily made. The Commonwealth also maintains that there is no obvious relationship between Hunter's incompetency to stand trial and his ability to make a voluntary statement.

When the voluntariness of a defendant's statements to pri- vate citizens is in issue, the judge must conduct a voir dire to determine the voluntariness of the statements. *Common- wealth* v. *Benoit*, 410 Mass. 506, 511 (1991). *Common- wealth* v. *Allen*, 395 Mass. 448, 456 (1985). "If the judge determines that the statements are voluntary . . . the issue of voluntariness should be submitted to the jury for considera- tion." *Id.* The Commonwealth has the burden of proving to both the judge and jury the voluntariness of the statements beyond a reasonable doubt. *Id.* at 456-457. "[A] statement by someone who 'by dint of physical or mental impediments is incapable of withholding the information conveyed' cannot be used as evidence against him." *Commonwealth* v. *Benoit*, *supra* at 511, quoting *Commonwealth* v. *Paszko*, 391 Mass. 164, 177 (1984). "Statements that are attributable in large measure to a defendant's debilitated condition, such as in- sanity . . . are not the product of a rational intellect or free will and are involuntary" (citations omitted). *Commonwealth* v. *Allen*, *supra* at 455.

Despite the Commonwealth's contentions to the contrary, Hunter did raise the issue of voluntariness by making the motion for a voir dire and by submitting an affidavit that stated that he was incompetent at the time and that a psychi- atrist had doubts about his competency to stand trial. See *Commonwealth* v. *Gallagher*, 408 Mass. 510, 514-515

(1990). Although the Commonwealth correctly notes that whether a defendant is competent to stand trial differs from whether he is able to make a voluntary statement, the two share common attributes and the bases for the doubts concerning Hunter's competency could have been very probative in determining whether he voluntarily made the statements. Hunter raised the issue by filing his motion and affidavit and the judge should have conducted a voir dire hearing to determine the voluntariness of the statements. His failure to do so constitutes error.

Furthermore, even though the judge instructed the jury on the issue of voluntariness, we cannot conclude that this error was harmless. The sole issue at trial concerned Hunter's state of mind at the time of the killing. The jury may have concluded from Hunter's statements that he was in control of what he was doing at the time of the killing and that Hunter had planned to kill his wife because she had brought him to court and had forced him out of the house. Thus, Hunter's conviction of murder in the first degree must be reversed.[2]

2. *Admission of testimony that Hunter refused to be examined for a second time by psychiatrist.* The judge had allowed the Commonwealth's motion that Hunter "present himself for an examination by a psychiatrist." The judge's order was properly made consistent with *Blaisdell* v. *Commonwealth,* 372 Mass. 753, 769 (1977). Dr. Martin Kelly examined Hunter on September 15, 1991, pursuant to this order. On October 26, 1991, Dr. Kelly again approached Hunter and requested a follow-up interview. Hunter refused to discuss anything with Dr. Kelly, indicating that his attorney had advised him that he need not submit to any further examination. At trial, Dr. Kelly testified on direct examination that Hunter had refused to submit to further examination on October 26, 1991. Dr. Kelly explained that Hunter

---

[2]The Commonwealth has moved to strike certain psychiatric reports and a commitment order from Hunter's record appendix. The Commonwealth alleges that these materials were not admitted in evidence and are not part of the record. These materials are not relevant to any issue on review and, accordingly, we have not considered them.

had refused on advice of counsel. The record indicates that the judge admitted the testimony regarding Hunter's refusal in anticipation of defense counsel's attempts to impeach Dr. Kelly on his failure to conduct multiple examinations.

A defendant who properly exercises his right to remain silent cannot be penalized for doing so. *Commonwealth v. Mahdi*, 388 Mass. 679, 695 n.15 (1983). In this case, the court order required Hunter to submit to only one examination. Thus, he had the right to refuse to speak with Kelly on October 26, 1991. Testimony regarding his refusal should not have been admitted on direct examination. If, on cross-examination, defense counsel inquired into how many times Dr. Kelly had examined Hunter, the Commonwealth, on redirect examination, could properly have elicited the testimony.

3. *Submission of the issue of extreme atrocity or cruelty to the jury*. Hunter also contends that the judge erred in submitting to the jury the issue of murder in the first degree by extreme atrocity or cruelty. We have consistently held that the question of extreme cruelty or atrocity is to be decided by the jury, as long as there is some basis in the evidence. *Commonwealth v. Colon-Cruz*, 408 Mass. 533, 557 (1990). *Commonwealth v. Connolly*, 356 Mass. 617, 628, cert. denied, 400 U.S. 843 (1970). There was evidence, aside from the testimony of Mallia and Christoforo, that Hunter shot his wife at least seven times within seconds at close range with a semi-automatic rifle after she had pleaded with him not to shoot her. There was no error in submitting this issue to the jury.

4. *Jury instructions on extreme atrocity or cruelty*. We next address Hunter's contention that the judge's instructions to the jury on the issue of extreme atrocity or cruelty were unconstitutionally vague. The judge, in his initial charge, instructed the jury that the Commonwealth had to prove that Hunter had caused the victim's death "by a method which surpassed the cruelty inherent in any taking of human life." He then proceeded to list a number of factors, found in *Commonwealth v. Cunneen*, 389 Mass. 216, 227 (1983), and cases cited, which they could consider. The judge then in-

structed the jury that "extreme atrocity or cruelty is not limited to such cases of such evidence." As we made clear in *Commonwealth* v. *Freiberg*, 405 Mass. 282, 289-290, cert. denied, 493 U.S. 940 (1989), the jury should consider these factors even though none is an essential element of the crime. Whether extreme atrocity or cruelty exists "must be decided by the jury, who, as the repository of the community's conscience, can best determine when the mode of inflicting death is so shocking as to amount to extreme atrocity or cruelty" (*Commonwealth* v. *Connolly, supra* at 628); however, the instructions in this case improperly permitted the jury to find extreme atrocity or cruelty without finding that any of the factors was present. This is inconsistent with our case law. See *Commonwealth* v. *Freiberg, supra* at 288-290; *Commonwealth* v. *Doucette*, 391 Mass. 443, 454 (1984); *Commonwealth* v. *Podlaski*, 377 Mass. 339, 348-349 (1979).

5. *Testimony concerning conversation with the victim.* Hunter contends that the judge erred in allowing testimony, over objection, of a witness's conversation with the victim. Sanna Murby, a friend of the victim, testified that, several months before the victim's death, she had observed the victim with a patch on her nose and a bandage around her ribs. Murby further testified that, as a result of an ensuing conversation with the victim, she told the victim to move out of her house and not allow Hunter to know where she was moving and that the victim had informed Murby that she planned to do something about her situation. Hunter contends that the testimony concerning the conversation is inadmissible because it is hearsay not falling within any exception. We do not agree. The comments were not hearsay because they were not offered to prove the truth of what they asserted, but were offered to prove the victim's state of mind and, in turn, Hunter's motive for killing her. Evidence of a hostile relationship between the defendant and the victim may be admitted as relevant to the defendant's motive. See *Commonwealth* v. *Todd*, 394 Mass. 791, 797 (1985); *Commonwealth* v. *Gil*, 393 Mass. 204, 215 (1984). There was no error.

6. *Conclusion.* Because of the foregoing, the judgment is reversed, the verdict set aside, and the case is remanded to the Superior Court for proceedings consistent with this opinion.

*So ordered.*