COMMONWEALTH *vs.* DIRCEU SEMEDO.

Suffolk. February 6, 1996. - May 22, 1996.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & FRIED, JJ.

*Homicide. Practice, Criminal,* Required finding, Instructions to jury, Severance, Trial of defendants together, Capital case. *Joint Enterprise. Evidence,* Joint enterprise, Hearsay. *Malice.*

Evidence at the trial of an indictment for first degree murder on a theory of extreme atrocity or cruelty was sufficient to warrant the jury's finding beyond a reasonable doubt that the defendant possessed malice aforethought and that he participated in a joint venture to murder the victim [718-721] and sufficient to submit the issue of the defendant's guilt to the jury on the theory of extreme atrocity or cruelty [721-722].

At the trial of an indictment for first degree murder by extreme atrocity or cruelty in which the Commonwealth proceeded against the defendant on a joint venture theory, the judge correctly instructed the jury on joint venture and on the three prongs of malice. [722-725]

In a murder case, tried before the decision in *Commonwealth* v. *Hunter,* 416 Mass. 831, 837 (1994), there was no substantial likelihood of a miscarriage of justice based on the judge's instructions to the jury on extreme atrocity or cruelty, where the judge clearly and properly delineated the evidentiary considerations set forth in *Commonwealth* v. *Cunneen,* 389 Mass. 216, 227 (1983), which the jury should weigh. [725-727]

Henceforth, in murder cases tried on the theory of extreme atrocity or cruelty, the judge should delineate the factors set forth in *Commonwealth* v. *Cunneen,* 389 Mass. 216, 227 (1983), for the jurors' consideration and should inform the jurors that they must base their verdict of guilty of murder by extreme atrocity or cruelty on evidence of at least one of the delineated considerations. [727]

At a murder trial, the defendant demonstrated no prejudice from the erroneous admission in evidence of certain hearsay statements of two codefendants, where the statements were redacted as requested by the defendant and, as such, were merely cumulative of other properly admitted evidence. [727-729]

At a murder trial, evidence of other criminal activity introduced by codefendants did not prejudice the defendant where it did not implicate the defendant in the activity and where the judge gave prompt and comprehensive limiting instructions. [729]

At a criminal trial there was no error in the judge's denial of the defendant's motion to sever his case from the codefendants' where certain evidence offered by the codefendants was not shown to be prejudicial to the defendant. [727, 729]

INDICTMENT found and returned in the Superior Court Department on April 30, 1992.

The case was tried before *Robert A. Mulligan*, J.

*Michael A. Collora* for the defendant.

*Mark D. Zanini*, Assistant District Attorney, for the Commonwealth.

ABRAMS, J. The defendant, Dirceu Semedo, was convicted of murder in the first degree and assault and battery by means of a dangerous weapon. He appeals from the conviction of murder in the first degree, claiming that the trial judge committed error in (1) the denial of his motion for a required finding of not guilty; (2) the jury instructions on joint venture; (3) the jury instructions on extreme atrocity or cruelty and; (4) the denial of his request for a severance after his codefendants allegedly introduced evidence prejudicial to him.[1] We conclude that the conviction of murder in the first degree should be affirmed. We decline to order a new trial, or to exercise our extraordinary power under G. L. c. 278, § 33E (1994 ed.), to enter a verdict of a lesser degree of guilt.

We recite the facts in the light most favorable to the Commonwealth, reserving certain details for discussion in conjunction with specific issues raised. See *Commonwealth* v. *Nichypor*, 419 Mass. 209, 210 (1994); *Commonwealth* v. *Salemme*, 395 Mass. 594, 595 (1985). On the night of April 22, 1992, close to midnight, the victim, Charleston Sarjeant (Sarjeant), with his wife and a friend, Eddy Toomer, entered the Tasty Chicken restaurant in the Dorchester section of Boston and ordered food. Sarjeant and his companions waited facing the counter, with their backs to the glass door in the front of the restaurant.

While Sarjeant and his companions were inside the restaurant, a group of young men, including Semedo, gathered on a traffic island in front of the restaurant. One of the young men, James Villaroel, threw a beer bottle against the front of the restaurant causing the victim and his companions to turn and look. He then shouted, "Let's shut him down" (or words to that effect) and moved toward the restaurant. The rest of the group, including Semedo, followed. Villaroel entered the

---

[1]Semedo has not appealed from the conviction of assault and battery by means of a dangerous weapon. We, therefore, review only the conviction of murder in the first degree.

restaurant first, carrying a large radio. Without saying a word, Villaroel struck Sarjeant in the back and side of the head with the radio. Within seconds, ten to twelve men encircled Sarjeant and began beating, punching, and kicking him. Witnesses testified that this attack on Sarjeant lasted from five to ten minutes. During the attack, Semedo held Sarjeant by the hood of Sarjeant's jacket, tearing the hood from the jacket. Witnesses saw Semedo kick, punch, and stomp on Sarjeant, particularly Sarjeant's head.

One to one and one-half minutes into the attack, Villaroel pulled a knife from his back pocket and began stabbing Sarjeant. During the stabbing, the other attackers, including Semedo, continued to punch, kick, and stomp on the victim. The attackers left as a group when Sarjeant fell to the floor and became unconscious. Sarjeant was beaten about the head and face. He was stabbed repeatedly.

The police arrived promptly, followed by medical personnel. Their efforts to save Sarjeant were in vain. Sarjeant died while en route to the hospital. He had bled out his entire blood volume on the floor of the Tasty Chicken restaurant.

An autopsy of Sarjeant revealed seven or more independent areas of blunt trauma to the head and facial area, nine stab wounds to the neck, back, and thighs and one cutting wound. The medical examiner who performed the autopsy opined that no one head or facial trauma was in and of itself fatal but he could not determine with medical certainty whether the combined effect of the head and facial injuries was fatal. He concluded that Sarjeant died as a result of the combination of multiple stab wounds and blunt head trauma.

At and prior to trial, Semedo was identified by three witnesses as having participated in the attack.[2] Deborah Sarjeant, the victim's wife, also identified Semedo at trial as one of the men who attacked her husband. The defendant testified that he was present for part of the attack but that he did not participate in the attack.

I. *Denial of motion for a required finding of not guilty.* In reviewing a motion for a required finding of not guilty, the

---

[2]The witnesses were Shahid Butt and Fazal Manzoor Khan, co-owners of the Tasty Chicken restaurant, and Fazal Mansoor Khan, cook at the Tasty Chicken. Each independently identified Semedo's photograph from an array containing twenty photographs. Semedo has not challenged the array on appeal.

critical inquiry is whether, after viewing the evidence, including inferences that are not too remote according to the usual course of events, in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979), and cases cited. The crime is murder in the first degree. The Commonwealth proceeded on a theory of extreme atrocity or cruelty. The Commonwealth proceeded against Semedo, Virgilio Barbosa, and Carlos Rezende on the theory that the murder was committed by joint venture.[3]

To sustain a conviction of murder in the first degree by joint venture, the Commonwealth must prove beyond a reasonable doubt that the defendant was present at the scene of the crime, with knowledge that another intended to commit a crime, and by agreement was willing and available to help the other if necessary. Additionally, the Commonwealth must show that the defendant shared with the principal the mental state required for the crime of murder. *Commonwealth* v. *Clarke*, 418 Mass. 207, 214 (1994). The defendant admitted presence at the brutal beating and stabbing of Sarjeant. The jury reasonably could have inferred from the testimony of eyewitnesses that Semedo participated in the beating and that he continued to kick and stomp on Sarjeant after Villaroel began stabbing Sarjeant. The defendant also held Sarjeant's hood and prevented his escape. Based on this evidence, the jury could reasonably infer that Semedo was willing and available to help Villaroel in the commission of the murder.

Semedo followed Villaroel into the restaurant and actively participated with others in the brutal beating of Sarjeant. From this, the jury could infer agreement among the joint venturers. *Commonwealth* v. *Longo*, 402 Mass. 482, 488 (1988) (conduct of group of men converging on victim and administering beating permitted jury to infer agreement). An agreement between joint venturers need not be express. *Commonwealth* v. *Soares*, 377 Mass. 461, 470, cert. denied, 444 U.S. 881 (1979) ("The jury may infer the requisite mental state from the defendant's knowledge of the circumstances and subsequent participation in the offense").

---

[3]Barbosa and Rezende were acquitted of all charges. In a separate trial, codefendants Villaroel, Johnson, Duarte, and Barros were convicted of murder in the first degree and assault and battery by means of a dangerous weapon. Appeals have not yet been heard.

The jury need not have found that the defendant had an unwavering intent to commit murder when he began the beating. "[I]t would suffice if the purpose to murder in the mind of [one defendant] was a conditional or contingent one, a willingness to see the [knifing] take place should it become necessary." *Commonwealth* v. *Hennessey*, 17 Mass. App. Ct. 160, 163 (1983). See *Soares, supra* at 471-472 ("if an individual is, by agreement, in a position to render aid, he is an abettor even if he does not participate in the actual perpetration of the crime, '[f]or the presence of the abettor under such circumstances must encourage and embolden the perpetrator to do the deed, by giving him hopes of immediate assistance' ").

The mental state required for murder is malice aforethought. Malice aforethought may be shown by proof that the defendant, without justification or excuse, intended to kill the victim. Malice aforethought may be inferred if, in the circumstances known to the defendant, a reasonably prudent person would have known that according to common experience there was a plain and strong likelihood that death would follow the contemplated act. *Commonwealth* v. *Judge*, 420 Mass. 433, 437-438 & n.3 (1995). *Commonwealth* v. *Grey*, 399 Mass. 469, 470 n.1 (1987). *Commonwealth* v. *Chance*, 174 Mass. 245, 252 (1899).

The jury reasonably could have found that Semedo possessed malice. There was evidence that Semedo participated with five to eleven other men in a brutal battery on Sarjeant and that Semedo battered the victim's head and body by means of a dangerous weapon, namely a shoe. See *Commonwealth* v. *Mahoney*, 406 Mass. 843, 848 (1990) (defendants should have known as vicious beating progressed that victim could suffer death). The jury could reasonably have concluded that Semedo's intention was to inflict injury and that this intention was coupled with an awareness that death might result from the injuries he participated in inflicting. Under the third prong of malice, the jury could infer that "in the circumstances known to the defendant, a reasonably prudent person would have known that according to common experience there was a plain and strong likelihood that death would follow [from his] act." See *Judge, supra*; *Grey, supra*.

If Semedo possessed the malice aforethought required for a conviction of murder, he is guilty as a joint venturer even if he did not hold the murder weapon or inflict the fatal blows.

See *Commonwealth* v. *Colon-Cruz*, 408 Mass. 533, 546-547 (1990); *Commonwealth* v. *Mahoney*, *supra* at 846-848 (evidence that defendant present at scene of and actively involved in savage beating sufficient to convict of joint venture; not necessary for Commonwealth to establish that defendant struck fatal blows). It is also not necessary that the Commonwealth prove that Semedo knew that his coventurer was armed with a dangerous weapon. See *Commonwealth* v. *Champagne*, 399 Mass. 80, 87 (1987) (facts warrant inference that defendant shared premeditated malice aforethought with others with respect to physical assault; irrelevant to conviction of murder in first degree whether jury reasonably could have inferred that defendant knew one or more of joint venturers was armed). There was sufficient evidence from which a reasonable juror could have found beyond a reasonable doubt that Semedo possessed malice and participated in a joint venture to murder Sarjeant. The motion for a required finding of not guilty as to the murder charge was properly denied.

Because the Commonwealth proceeded on the theory of murder in the first degree by extreme atrocity or cruelty, "the evidence must be of such a character as to show that the crime was committed [in] circumstances indicating something more than ordinary atrocity or cruelty." *Commonwealth* v. *Connolly*, 356 Mass. 617, 628, cert. denied, 400 U.S. 843 (1970), quoting *Commonwealth* v. *Knowlton*, 265 Mass. 382, 388 (1928). The jury could consider the defendant's indifference to or pleasure in the victim's suffering, the victim's consciousness and degree of suffering, the extent of injuries inflicted, the number of blows, the manner and force by which the blows were delivered, the weapon used by the defendant, and the disproportion between the means necessary to cause death and the means employed. *Commonwealth* v. *Cunneen*, 389 Mass. 216, 227 (1983). Proof of malice aforethought is the only mental intent required for a conviction of murder in the first degree based on extreme atrocity or cruelty. See *Commonwealth* v. *Freiberg*, 405 Mass. 282, 288, cert. denied, 493 U.S. 940 (1989) (no requirement of intent to inflict extraordinary pain or suffering to convict of murder based on extreme atrocity or cruelty).

Based on the evidence, there was no error in submitting to the jury the issue of the defendant's guilt based on extreme

atrocity or cruelty. In this case, like *Commonwealth* v. *Nichypor*, 419 Mass. 209 (1994), the defendant continued to participate in the crime in circumstances where a reasonable person would believe that the victim was experiencing pain. The defendant repeatedly kicked, punched, and jumped on the victim. See *Commonwealth* v. *Medina*, 380 Mass. 565, 573 (1980) (extreme atrocity or cruelty sufficiently shown if one considered only beating and suffering); *Commonwealth* v. *McGarty*, 323 Mass. 435, 440 (1948) (repeated violent blows evince such ferocity as would warrant determination of extreme atrocity or cruelty). From the testimony of the eyewitnesses, a jury could reasonably infer that the victim was conscious and suffering during the brutal attack and that the defendant was indifferent to such suffering. After consideration of the beating coupled with the number of assailants, the number of blows, the length of the attack, and the extent of the victim's injuries, we conclude there was no error in submitting to the jury the question whether the murder of Sarjeant was committed with extreme atrocity or cruelty. See *Commonwealth* v. *Podlaski*, 377 Mass. 339, 346-347 (1979) (defendant can be convicted of murder with extreme atrocity or cruelty by means of participation in joint venture). The motion for a required finding of not guilty was properly denied.

II. *Jury instruction on murder by joint venture.* The defendant contends that in order to convict him of murder by joint venture, the Commonwealth must prove beyond a reasonable doubt that he knew that the principal, Villaroel, was armed with a knife.

The judge ruled that the Commonwealth was not required to prove that Semedo knew the principal, Villaroel, was armed because possession of a dangerous weapon was not an element of the crime of murder by extreme atrocity or cruelty. The judge instructed the jury to this effect. He also instructed that the Commonwealth was required to prove beyond a reasonable doubt that a defendant who was not armed with a knife acted with malice. The charge is set forth in the margin.[4]

When reviewing jury instructions, we look to the charge in

[4]"If the Commonwealth proves beyond a reasonable doubt that a defendant was part of a joint venture and that he acted, he, himself, acted with malice under one of the three prongs of the definition of malice, under any one of the three prongs of the definition of malice, and that a joint venturer

its entirety, in light of its over-all impact on the jury. *Commonwealth* v. *Clarke*, 418 Mass. 207, 216 (1994). We conclude there was no error.

When the theory of first degree murder is murder by extreme atrocity or cruelty, knowledge of a joint venturer's possession of a weapon is not necessary. *Commonwealth* v. *Colon-Cruz*, 408 Mass. 533, 546, 555 (1990) (not necessary that jury be instructed regarding defendant's knowledge that codefendants were armed because such knowledge not essential to proof of murder by deliberate premeditation or extreme atrocity or cruelty). The cases cited by the defendant for the proposition that knowledge of a coventurer's possession of a weapon is a prerequisite for conviction of murder in the first degree are inapposite as they involved convictions for murder in the first degree based on felony-murder. In those cases, the possession of a weapon was an element of the underlying felony. See *Commonwealth* v. *Claudio*, 418 Mass. 103, 111 (1994) (must charge jury that they may find defendant guilty of joint venture of breaking and entering in night time with intent to commit an *armed* assault and commission of *armed* assault only if Commonwealth proved beyond reasonable doubt that defendant had knowledge that companion armed; conviction of murder in the first degree set aside); *Commonwealth* v. *Watson*, 388 Mass. 536, 543-546 (1983), *S.C.*, 393 Mass. 297 (1984) (where underlying felony charged

with him was also acting with malice under any one of the three prongs of malice, and the actions of one joint venturer or the combined actions of two or more joint venturers caused the victim's death, the Commonwealth will have proven that defendant guilty of murder. The Commonwealth must prove beyond a reasonable doubt that a defendant was part of a joint venture, that the defendant either actually intended to kill the victim . . . or actually intended to inflict grievous bodily harm upon [the victim], or intended to commit an act which in the circumstances known to him would create a plain and strong likelihood that death would occur, and the actions of the defendant or the actions of a joint ventur[er], combined actions of the joint venturers with whom he was then acting during the joint venture caused the death of [the victim].

"The Commonwealth is not required to prove that a defendant who was not armed with a dangerous weapon; for example, a knife, knew that a codefendant was armed with a knife. However, the Commonwealth is required to prove beyond a reasonable doubt that a defendant who was not armed with a knife acted with malice, and that he himself intended to inflict grievous bodily harm on [the victim], or he intended to kill [the victim], or he intended to commit an act which would create a plain and strong likelihood that death would follow the contemplated act."

is *armed* robbery, judge must instruct that Commonwealth must prove defendant's knowledge that codefendant is armed before the jury could convict of felony-murder).

The judge correctly instructed the jury on the three prongs of malice and properly instructed them that they could not convict the defendant of murder in the first degree without first determining that the defendant himself possessed malice. The judge properly and repeatedly instructed the jury that they could not infer malice on the part of the defendant Semedo from the possession of a dangerous weapon by Villaroel unless the Commonwealth proved beyond a reasonable doubt that Semedo had knowledge at the time of the joint venture that Villaroel possessed a weapon.[5] We assume that the jury followed the judge's instructions. *Commonwealth* v. *Rosa, ante* 18 (1996). There is nothing in the record to indicate that they did not.

The defendant would have us hold that the jury could only determine that he possessed malice if they found that he knew at the time of the assault that Villaroel possessed a knife.[6] Such a holding would preclude a determination of malice from the nature of the attack, the number of assailants and number of blows, and the use of other dangerous weapons

[5]The judge instructed as follows: "Now, before you may infer malice in the intentional use of a dangerous weapon against any joint venturer who is unarmed himself, the Commonwealth must satisfy you beyond a reasonable doubt that he knew that a joint venturer with whom he was then engaged in a joint venture was using a dangerous weapon. So you can't draw an inference of malice or the intentional use of a dangerous weapon against a joint venturer who is not armed with a dangerous weapon unless the Commonwealth satisfies you, unless the Commonwealth satisfies you that he knew that another joint venturer was, during the joint venture at the time, using a dangerous weapon."

In response to a question from the jury, the judge reiterated this instruction, informing the jury as follows: "[Y]ou cannot, you shall not draw an inference of malice against an unarmed joint venturer from an armed joint venturer's use of a dangerous weapon unless the Commonwealth proves beyond a reasonable doubt that the unarmed joint venturer knew that the armed joint venturer was armed with and was using a dangerous weapon during the joint venture. When I say during the joint venture, that is while the unarmed joint venturer was still part of the joint venture."

[6]While not relying on this ground, we note that because the jurors were properly instructed on the joint venture theory of assault and battery by means of a knife and they convicted Semedo under this theory, the jury necessarily must have concluded that Semedo had knowledge at the time of the joint venture that Villaroel had a knife.

in the attack and would be contrary to settled law. See *Commonwealth* v. *Sinnott*, 399 Mass. 863, 873 (1987) (jury might properly infer shared intent necessary to convict defendant of murder with extreme atrocity or cruelty by joint venture from infliction of repeated blows and kicks to victim's head, shoulders, and groin); *Commonwealth* v. *Quigley*, 391 Mass. 461, 466-467 (1984), cert. denied, 471 U.S. 1115 (1985) (instructions "correctly permitted the jurors to infer malice from evidence that the defendant beat and kicked the victim"); *Commonwealth* v. *Marple*, 26 Mass. App. Ct. 150, 160 (1988) (where crime charged is murder, requisite shared malice can be proved by defendant's participation in severe beating of victim and is not limited to proof of knowledge of particular weapon).

III. *Jury instruction on extreme atrocity or cruelty.* Relying on *Commonwealth* v. *Hunter*, 416 Mass. 831, 837 (1994), the defendant at oral argument challenged the jury instruction on extreme atrocity or cruelty.[7] Although the judge delineated the considerations which the jury should weigh when deciding whether a murder was committed with extreme atrocity or cruelty, see *Cunneen, supra,* the defendant claims that the judge committed reversible error by instructing the jury that "extreme atrocity or cruelty is not limited to cases with such evidence." Inclusion of the complained of sentence does not require reversal of the defendant's conviction of murder in the first degree.

In *Commonwealth* v. *Cunneen, supra,* we delineated a number of evidentiary considerations which jurors may consider in deciding whether a murder was committed with extreme atrocity or cruelty. We said the jurors should consider evidence of indifference to or taking pleasure in the victim's suffering, consciousness and degree of suffering of the victim, extent of physical injuries, number of blows, manner and force with which they were delivered, instrument employed, and disproportion between the means needed to cause death and those employed. *Cunneen, supra* at 227. In

---

[7]Because the defendant neither objected at trial to the instruction on extreme atrocity or cruelty (it was objected to only by a codefendant who was acquitted) nor briefed the issue to this court, we consider only whether relief under G. L. c. 278, § 33E, is appropriate. See *Commonwealth* v. *Rosa, ante* 18, 29-30 (1996) (where trial counsel did not object to instruction on grounds proffered on appeal, we look only for a substantial likelihood of a miscarriage of justice).

*Commonwealth* v. *Hunter, supra,* we stated, in dictum, that evidence of at least one of these evidentiary considerations was a mandatory prerequisite for a jury determination that the defendant committed a murder with extreme atrocity or cruelty.[8]

The issue before us is whether the principle enunciated in *Hunter* should be applied retrospectively to a case tried before this court issued its opinion in *Hunter.* We conclude that *Hunter* is not retroactive. The defendant was tried before our decision in *Hunter,* he did not request instructions in accord with what we decided in *Hunter,* and he did not object to the charge given. In these circumstances, we apply the *Hunter* principle only if there is a substantial likelihood of a miscarriage of justice. See *Commonwealth* v. *Cunneen, supra* at 229; *Commonwealth* v. *Shelley,* 381 Mass. 340, 355 (1980) (court declines to exercise extraordinary power to order new trial based on *Commonwealth* v. *Gould,* 380 Mass. 672 [1980], where case tried before date of *Gould,* no egregious facts, no charge sought, no objection at trial). Cf. *Commonwealth* v. *Robbins, ante* 305 (1996) (in dicta, court endorsed application of *Hunter* principle where defendant had objected to charge on extreme atrocity or cruelty at trial); *Commonwealth* v. *Blackwell, ante* 294 (1996) (same).

We conclude that there is no substantial likelihood of a miscarriage of justice requiring reversal on the basis of the instructions on extreme atrocity or cruelty. See *Commonwealth* v. *Rosa, ante* 18, 31 (1996) (no substantial likelihood of miscarriage of justice where charge made repeated reference to *Cunneen* factors). The judge clearly and properly delineated the *Cunneen* factors in his instructions. After uttering the sentence at issue, the judge again discussed the *Cunneen* factors and instructed the jurors that they "should determine, based upon the factors previously stated and

---

[8]The cases cited as support by the *Hunter* court did not address the issue whether presence of one of the factors was mandatory. See *Commonwealth* v. *Freiberg,* 405 Mass. 282, 289, cert. denied, 493 U.S. 940 (1989) (phrase "extreme atrocity or cruelty" is not unconstitutionally vague because juries "take into account" factors listed in *Commonwealth* v. *Cunneen,* 389 Mass. 216 [1983]); *Commonwealth* v. *Doucette,* 391 Mass. 443, 454 (1984) (previous decisions discussing factors do not impose mandatory burden on judge to recite each and every factor); *Commonwealth* v. *Podlaski,* 377 Mass. 339, 348-349 (1979) (victim's consciousness or suffering is not indispensable element of murder with extreme atrocity or cruelty).

injuries inflicted, whether the crime was committed with extreme atrocity or cruelty." There is no substantial likelihood that the jury did not base their verdict on at least one of the *Cunneen* factors in view of the evidence that up to twelve assailants, including Semedo, beat and kicked the victim for five to ten minutes and that the victim suffered from at least seven blunt traumas to his head and facial area and nine stab wounds. The injuries to the victim's head and face were extensive and potentially fatal. The injuries resulted from repeated kicking to the head with a shod foot by the defendant and from being jumped on by the assailants, including the defendant. The victim was conscious and suffering throughout the ordeal. Eyewitnesses recounted the victim's (and his wife's) pleas for help. Yet, the defendant continued to beat the victim and prevent him from leaving to a safer place. Further, the defendant continued to beat and kick Sarjeant after Villaroel produced the knife and stabbed the victim nine times. Based on the overwhelming evidence of extreme atrocity or cruelty, we conclude that there is no substantial likelihood that the jury convicted Semedo without basing their decision on at least one of the *Cunneen* factors. There was no substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Goudreau, post* 731 (1996).

We add that, in the future, judges should not instruct jurors that "extreme atrocity or cruelty is not limited to cases with such evidence." In accord with *Hunter,* from the date of this opinion, the judge should delineate the factors for the jurors' consideration and inform the jurors that they must base their verdict of guilty of murder by extreme atrocity or cruelty on evidence of at least one of the delineated considerations.

IV. *Denial of motion to sever.* Semedo asserts that severance of his case was required because the judge allowed his two codefendants to offer evidence prejudicial to him. Specifically he asserts that the judge admitted in evidence hearsay statements of witnesses. He also alleges the judge erred in admitting evidence of a prior unrelated robbery. We conclude that there was no error in the denial of Semedo's motion to sever because he was not prejudiced by the evidence offered at the joint trial. We consider each of the allegedly prejudicial statements in turn.

a. *Hearsay statements of eyewitnesses.* In furtherance of their defenses, the codefendants Rezende and Barbosa offered

in evidence recorded statements made to police by three witnesses who refused to testify at trial, claiming a privilege under the Fifth Amendment to the United States Constitution.[9] The judge determined that, although the statements were not technically statements against penal interest,[10] they were reliable and trustworthy. He allowed in evidence redacted portions of the statements. This was error as the statements are hearsay and do not fit into any recognized exception to the hearsay rule. In Massachusetts, we do not recognize the innominate exception to the hearsay rule embodied in Fed. R. Evid. 804 (b) (5) and 803 (24). See *Commonwealth* v. *Pope*, 397 Mass. 275, 279 (1986); *Commonwealth* v. *Meech*, 380 Mass. 490, 496 (1980); *Commonwealth* v. *White*, 370 Mass. 703 (1976). See also *Commonwealth* v. *Costello*, 411 Mass. 371, 377 (1991).

Semedo's counsel participated with the judge, prosecutor, and other defense attorneys in redacting the statements to remove prejudice to Semedo. The Commonwealth argues that Semedo waived his objection to admission of the testimony by cooperating with the judge in redacting the statements. We reject the Commonwealth's argument that by participating in the redaction Semedo waived objection to the admission of the statements. A defendant does not waive his objection to the admission of evidence by cooperating with counsel and the court on redaction, if he objects to admissions of the statement after it has been redacted.

The defendant, however, is not entitled to relief as he was not prejudiced by the error. All redactions requested by the defendant were made, including redaction of an identification of Semedo by one of the declarants as a participant in the attack. As redacted, this statement was merely cumulative of other evidence which placed Semedo at the scene and described the nature of the attack. Cf. *Commonwealth* v. *Helfant*, 398 Mass. 214, 224 (1986) (any prejudice arising from error in admission of evidence did not weaken defendant's case in significant way). The statements of the other witnesses in their redacted form did not even name Semedo. Severance of the trials was not required. See *Commonwealth* v. *Best*, 381

[9]The validity of their exercise of this privilege is not challenged.

[10]The witnesses admitted witnessing the crime but denied being inside the restaurant or involved in the attack. The statements exculpated rather than inculpated the declarants.

Mass. 472, 487-488 (1980) (redaction of portions of statements inculpating defendant alleviates need for severance).

b. *Evidence of chain snatching.* Over the objection of Semedo, counsel for the codefendant Rezende was allowed to elicit from a witness, on redirect examination, that on the night of the murder, the witness, with his girl friend, was in the vicinity of the homicide. A group of young, black men approached them and one of the men snatched a chain from the girl friend's neck. Neither of the codefendants was among the group. On recross-examination by Semedo, the witness said that Semedo was standing apart from the group when the young man snatched the chain. Immediately following this testimony, the judge instructed the jury that the testimony as to the chain-snatching incident was admitted in evidence solely as to whether the witness would remember who was present and whether he would be friendly or unfriendly toward the people present.[11]

This evidence was relevant to the codefendants' defense as it supported their contention that they were not in the vicinity of the murder. The testimony did not implicate Semedo in the prior criminal activity and the judge gave prompt and comprehensive limiting instructions. There was no prejudice to Semedo. See *Commonwealth* v. *Jackson*, 384 Mass. 572, 579 (1981) (careful, forceful instruction to jurors limiting their consideration of evidence renders any error in the introduction of prejudicial evidence harmless); *Commonwealth* v. *Roberts*, 378 Mass. 116, 127 (1979); *Commonwealth* v. *Giannopoulos*, 34 Mass. App. Ct. 937, 938 (1993) (appropriate limiting instruction as to proper use of statement eliminated adverse effect of testimony on defense). Admission of the testimony of the robbery was not "so compelling that it prevent[ed the] defendant from obtaining a fair trial." *Commonwealth* v. *Moran*, 387 Mass. 644, 658 (1982). Semedo's motion for severance was correctly denied.

V. *Relief under G. L. c. 278, § 33E.* We have considered the entire case on the law and the evidence, see G. L. c. 278, § 33E, and we conclude that the interests of justice do not

---

[11]The girl friend later testified substantially in accordance with the witness. No limiting instruction was requested or given regarding her testimony. Nor was there a renewal of Semedo's objection, his request for severance or his request for mistrial.

require entry of a lesser degree of guilt or a new trial on the conviction of murder in the first degree.

*Judgment affirmed.*