### COMMONWEALTH vs. EDWIN F. SMITH.

Plymouth. May 5, 2011. - August 3, 2011.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, & DUFFLY, JJ.

*Practice, Criminal,* New trial, Postconviction relief, Appeal by Commonwealth, Instructions to jury. *Homicide.*

Discussion of plenary review and the so-called "gatekeeper" provision of G. L. c. 278, § 33E. [319-323]

A Superior Court judge, in granting a criminal defendant's motion for a new trial in a capital case, erred in concluding that an instruction on extreme atrocity or cruelty created a substantial risk of a miscarriage of justice, and that this court did not adequately consider the issue of the erroneous instruction on plenary review in the defendant's direct appeal [323-324]; further, where the defendant was not entitled to a voluntary manslaughter instruction based on provocation, the judge abused her discretion in granting the defendant a new trial on the ground that the instruction was erroneous and had not been carefully considered during plenary review [324-326].

INDICTMENT found and returned in the Superior Court Department on June 20, 1994.

A motion for a new trial, filed on January 14, 2009, was heard by *Margaret R. Hinkle,* J.

A request for leave to appeal was allowed by *Cordy,* J., in the Supreme Judicial Court for the county of Suffolk.

*Mary E. Lee,* Assistant District Attorney, for the Commonwealth.

*David Keighley* for the defendant.

SPINA, J. The defendant was convicted in 1995 of murder in the first degree on the theory of extreme atrocity or cruelty. That conviction was affirmed on appeal. See *Commonwealth* v. *Smith,* 426 Mass. 76 (1997). In 2009, the defendant filed a motion for a new trial that challenged, inter alia, the instruction on extreme atrocity or cruelty, and the instruction on reasonable provocation as it relates to both murder and manslaughter. The judge, who also was the trial judge, did not think the issues had

been carefully considered on plenary review under G. L. c. 278, § 33E, and granted the motion for a new trial. The Commonwealth filed an application pursuant to G. L. c. 278, § 33E, for leave to appeal. The single justice granted leave to appeal. We now vacate the order granting the defendant's new trial.

1. *Background.* The facts set forth in the court's opinion on the defendant's direct appeal are summarized as follows, supplemented by facts in the trial record that the jury could have found. *Id.* We reserve other details for discussion of specific issues. The defendant and the victim had been in a dating relationship for about six weeks at the time of the murder. They were not living together. On the afternoon of May 20, 1994, they went to the house of a friend of the defendant and to some bars, where the defendant consumed both alcohol and cocaine. At one point he walked outside one bar and discovered the victim in a car engaged in oral sex with another man. A fight ensued between the men. The defendant and the victim then went to the defendant's apartment in Brockton.

Later that night the defendant went out alone. Two women he knew noticed scratches on his face. When asked about the victim, he explained that she had passed out in his apartment. Early the next morning he was talking with some people from his apartment building. When they asked about the victim, he said she was "home passed out."

On the afternoon of May 21, 1994, the defendant spoke with his sister and told her that he saw the victim having oral sex with another man, that he fought with the man, and that after he and the victim returned to his apartment, he choked her. He also said he checked her for a pulse. He told one of his brothers a similar version of events, but added that the victim was at his apartment and he feared something might be wrong with her. At about 6 P.M. that day the defendant's brother flagged down a Brockton police officer, directed him to the defendant's apartment, and let him in. The victim's body was in the bedroom. The cause of death was manual strangulation.

At 6:10 P.M. on May 21, 1994, the defendant walked into the Brockton police station and told police he was there to "confess" to the murder of "his girl friend down at 664 Warren Avenue."

2. *Standard of review.* A brief discussion of plenary review

and the gatekeeper provision of G. L. c. 278, § 33E, is in order. It is not uncommon for a Superior Court judge considering a motion for a new trial in a capital case, after this court already has affirmed the defendant's conviction of murder in the first degree in the direct appeal, to reject summarily any basis for the motion that could have been raised in the direct appeal or considered on plenary review. Indeed, that is a typical approach. See, e.g., *Commonwealth* v. *Lao*, 450 Mass. 215, 216 n.1 (2007), *S.C., ante* 12 (2011). A judge acting in this fashion would be mindful that, in hearing the direct appeal, this court would have already provided the defendant with plenary review of the appeal, as we are required to do under § 33E. The statute imposes on this court an obligation to review the entire record of the case, a most solemn obligation warranted by the infamy of the crime and the severity of the sentence. We are charged with considering "the whole case, [on] the law and the evidence," G. L. c. 278, § 33E, to ensure that there has been no substantial likelihood of a miscarriage of justice and that no other result is more consonant with justice. Toward that end we consider not only the preserved and unpreserved claims of error argued by the defendant on appeal, but also other grounds for reversal or a reduction of the verdict that we may discover as a result of our independent review of the entire record. See generally *Commonwealth* v. *Angiulo*, 415 Mass. 502, 508-509 (1993); *Dickerson* v. *Attorney Gen.*, 396 Mass. 740, 741-742, 743-744 (1986), and cases cited; *Commonwealth* v. *Cole*, 380 Mass. 30, 38-39 (1980), and cases cited. See also *Commonwealth* v. *Wright*, 411 Mass. 678, 681-682 & n.1 (1992); *Commonwealth* v. *Ciampa*, 406 Mass. 257, 267-269 (1989). Given the thoroughness of this unique form of review contemplated by the statute, it should be a very rare situation where, following the direct appeal, relief is granted based on a claim of error that either was or could have been raised at the trial or in the direct appeal. The judge in this case thought this to be such a situation, but for reasons explained in parts 3 and 4 below, we conclude that it is not.[1]

Moreover, in a capital case, issues raised in a postappeal mo-

---

[1]In the usual case, the text of the opinion in an appeal from a conviction of murder in the first degree expressly addresses only those claims that have

tion for a new trial that were or could have been raised at trial or in the direct appeal are to be measured by the substantial risk of a miscarriage of justice standard. We have said that "[e]rrors of this magnitude are extraordinary events and relief is seldom granted," *Commonwealth* v. *Randolph,* 438 Mass. 290, 297 (2002), citing *Commonwealth* v. *Amirault,* 424 Mass. 618, 646-647 (1997), and that "[s]uch errors are particularly unlikely where, as here, the defendant's conviction . . . has undergone the exacting scrutiny of plenary review under § 33E." *Commonwealth* v. *Randolph, supra.* See *Commonwealth* v. *Drew,* 447 Mass. 635, 638-639 (2006), cert. denied, 550 U.S. 943 (2007).[2]

If a motion for a new trial is denied in the trial court, the defendant cannot appeal as a matter of right. The statute, in recognition of the fact that the defendant already has received plenary review in the direct appeal, states that "no appeal shall lie from the decision . . . upon such motion unless the appeal is allowed by a single justice of [this] court on the ground that it presents a new and substantial question which ought to be determined by the full court." G. L. c. 278, § 33E. "In this

been specifically argued in the appellate briefs; as for issues and possible bases for relief not argued, although we consider them, we typically do not expressly mention them, or mention them only briefly. See, e.g., *Commonwealth* v. *Beneche,* 458 Mass. 61, 81-82 (2010); *Commonwealth* v. *Garvin,* 456 Mass. 778, 800 (2010); *Commonwealth* v. *Guy,* 441 Mass. 96, 113 (2004); *Commonwealth* v. *Johnson,* 435 Mass. 113, 122 n.10 (2001); *Commonwealth* v. *Jones,* 432 Mass. 623, 629-630 n.5, 634 (2000); *Commonwealth* v. *Anderson,* 425 Mass. 685, 691-692 (1997); *Commonwealth* v. *Valentin,* 420 Mass. 263, 275 (1995); *Commonwealth* v. *Daggett,* 416 Mass. 347, 355-356 (1993). Even though we do not itemize or expressly analyze in the text of the opinion all of the points and possible grounds for reversal or reduction that we may have considered, trial judges, counsel, and litigants are entitled to assume that, when this court conducts plenary review in an appeal from a conviction of murder in the first degree, it takes this obligation seriously and conducts a thorough review to the best of its ability. If a judge denies a motion for a new trial because the matter could have been considered on plenary review but remains troubled by the result, she may make a recommendation that the defendant may then present to the single justice.

[2]The substantial *likelihood* of a miscarriage of justice standard that is associated with plenary review under G. L. c. 278, § 33E, and which we have said is more forgiving to a defendant than the substantial *risk* standard applicable in other criminal cases, see *Commonwealth* v. *Amirault,* 424 Mass. 618, 646 n.20 (1997), and cases cited, is limited to the direct appeal. See *Commonwealth* v. *Wright,* 411 Mass. 678, 682 n.1 (1992).

manner, a full quorum of the Supreme Judicial Court is spared the task of hearing frivolous or duplicative claims." *Dickerson* v. *Attorney Gen.*, *supra* at 744-745. See *Commonwealth* v. *Gunter*, 459 Mass. 480, 485-489 (2011). Likewise, when a motion for a new trial is allowed, the Commonwealth has no automatic right of appeal. It too is required to obtain leave from a single justice gatekeeper before it may prosecute an appeal. *Commonwealth* v. *Francis*, 411 Mass. 579, 582-585 (1992). In evaluating an application by the Commonwealth for leave to appeal from allowance of a motion, however, the single justice's primary focus should be on the meritoriousness or "substantiality" of the Commonwealth's position on appeal and less on the newness of the underlying issue. See *id.* at 583-585; *Commonwealth* v. *Lanoue*, 409 Mass. 1, 8 (1990) (O'Connor, J., concurring). It would make little sense to deny the Commonwealth an opportunity for appellate review if it appears that the judge below erred or abused her discretion in granting a new trial on an issue that was not, technically speaking, new.

Regardless of the nuances of the "new and substantial" standard and its application in different contexts, the court in the past has expressed confidence — and we remain confident today — that single justices faced with gatekeeper applications under § 33E will allow cases to proceed to the full court in all meaningful matters (as the single justice in this case has done), and will correctly screen out those that do not warrant another appeal. See *Commonwealth* v. *Francis*, *supra* at 584-585 ("We remain confident that a single justice will allow those appeals which warrant review by the full court"); *Leaster* v. *Commonwealth*, 385 Mass. 547, 550 (1982) ("We have every confidence that the single justices in all such cases will allow access to the full court in meaningful matters and, similarly, will bar further proceedings in matters which do not meet the 'new and substantial' test of § 33E"). See also *Commonwealth* v. *Latimore*, 423 Mass. 129, 140 (1996) (Wilkins, J., concurring). And the single justice's decision, whether it is to permit or prohibit an appeal, is final and unreviewable. *Napolitano* v. *Attorney Gen.*, 432 Mass. 240, 241 (2000), and cases cited. See *Leaster* v. *Commonwealth*, *supra* at 649-650. See also, e.g.,

*Commonwealth* v. *Scott*, 437 Mass. 1008 (2002) (dismissing purported appeal from single justice's denial of gatekeeper application pursuant to G. L. c. 278, § 33E).

The single justice having allowed the Commonwealth's application for leave to appeal here, we now turn to the merits of the appeal.

3. *Instruction on extreme atrocity or cruelty.* The jury were instructed that they could consider certain factors (set forth in *Commonwealth* v. *Cunneen*, 389 Mass. 216, 227 [1983]) when deciding if murder was committed with extreme atrocity or cruelty. However, they were further instructed that they were not limited to those factors. There was no objection to the instruction, and the defendant did not argue in his direct appeal that the instruction was erroneous. The instruction was error. See *Commonwealth* v. *Hunter*, 416 Mass. 831, 836-837 (1994), *S.C.*, 427 Mass. 651 (1998) (error to instruct extreme atrocity or cruelty not limited to *Cunneen* factors). The *Hunter* case was decided nearly two years before the defendant's trial and stated the prevailing law at the time of the defendant's trial.

Although the defendant did not raise the question of the erroneous instruction on extreme atrocity or cruelty at trial or in his direct appeal, the Commonwealth anticipated that it would arise on plenary review. It specifically alerted the court to the problem in its appellate brief, and it cited the *Hunter* case. Moreover, the Commonwealth argued at that time that the error did not require relief under G. L. c. 278, § 33E, citing *Commonwealth* v. *Semedo*, 422 Mass. 716, 727 (1996), decided five months after the defendant's trial but approximately eighteen months before his direct appeal was decided.

In *Commonwealth* v. *Semedo*, *supra* at 726-727, this court held that the same unobjected-to erroneous instruction that was given here did not create a substantial likelihood of a miscarriage of justice.[3] The court reasoned that there was no substantial likelihood that the jury did not base their verdict on at least one

---

[3]*Commonwealth* v. *Semedo*, 422 Mass. 716, 726-727 (1996), involved a direct appeal, hence the application of the substantial *likelihood* standard. The instant appeal involves collateral review, hence application of the substantial *risk* standard. See *Commonwealth* v. *Randolph*, 438 Mass. 290, 297 (2002).

of the *Cunneen* factors in view of the trial evidence.[4] *Id.* The same reasoning applies to this case.

Here, there was substantial evidence of several *Cunneen* factors. There was evidence that the victim died from strangulation that would have had to last four to five minutes to cause death. See *Commonwealth* v. *Linton*, 456 Mass. 534, 546-547, 553 (2010) (death by prolonged and forceful manual strangulation can support conviction of extreme atrocity or cruelty); *Commonwealth* v. *Mendes*, 441 Mass. 459, 475-476 (2004) (same). There was evidence she probably would have been conscious for thirty to sixty seconds. This evidence demonstrated the degree and her awareness of suffering. There was evidence of extensive bruising to the neck of the victim, and evidence that the strangulation here required "considerable" force. In addition, during the struggle, the defendant's bed broke, the victim sustained a black eye, and she inflicted two gouges to the defendant's face. This evidence suggested a fierce struggle on the part of the defendant to effectuate death and on the part of the victim to survive. There was evidence of the defendant's indifference to the victim's suffering. He admitted going to sleep after strangling her; after he awoke and realized she was dead, he simply went back to sleep. He awoke again, then went out drinking with friends. There is no substantial risk that the jury did not find at least one of the *Cunneen* factors in returning a verdict of murder by extreme atrocity or cruelty. See *Commonwealth* v. *Semedo*, *supra* at 726-727 (no substantial likelihood that erroneous instruction resulted in guilty verdict).

It was error for the judge to conclude that the instruction created a substantial risk of a miscarriage of justice, and that this court did not adequately consider the issue of the erroneous instruction on plenary review. Although the court did not discuss the matter in its plenary review, the record clearly indicates that the *Hunter* issue was presented for the court's plenary review.

4. *Instruction on provocation and voluntary manslaughter.* The judge determined that her provocation instruction also had

---

[4]In *Commonwealth* v. *Semedo*, *supra* at 727, citing *Commonwealth* v. *Hunter*, 416 Mass. 831, 836-837 (1994), *S.C.*, 427 Mass. 651 (1998), the court said that jurors henceforth must be instructed that a verdict of extreme atrocity or cruelty must be based on evidence of at least one *Cunneen* factor.

not been carefully considered on plenary review. She then concluded that the defendant was entitled to a new trial because her jury instructions on provocation and voluntary manslaughter were erroneous for the reasons stated in *Commonwealth* v. *Acevedo*, 427 Mass. 714 (1998) (*Acevedo*).

We agree that the instruction on voluntary manslaughter is substantially similar to the one that required a new trial in the *Acevedo* case. The court, however, did not create a new rule, but applied an established principle that the malice necessary for murder and reasonable provocation are mutually exclusive. *Id.* at 715-716, citing and relying on *Commonwealth* v. *Boucher*, 403 Mass. 659, 661-662 (1989). This court was thus well equipped to identify an "*Acevedo* error" in its plenary review during the defendant's direct appeal, even before *Acevedo* was decided. Indeed, the *Boucher* case was significant authority for the court's decision in *Acevedo*. In any event, the *Acevedo* error did not require a new trial because the defendant was not entitled to a voluntary manslaughter instruction based on provocation. See *Commonwealth* v. *Simpson*, 434 Mass. 570, 589-590 (2001).

In support of his argument that a voluntary manslaughter instruction based on provocation was required, the defendant relies on the evidence that he discovered the victim "engaging in oral sex with another man." See *Commonwealth* v. *Anderson*, 408 Mass. 803, 804-805 (1990); *Commonwealth* v. *Schnopps*, 383 Mass. 178, 180-181 (1981), *S.C.*, 390 Mass. 722 (1984). "[P]rovocation occurs only when an action of the victim triggers a *sudden* loss of self-control in the defendant. . . . [T]he killing must occur before there is sufficient time for the defendant to cool off." (Emphasis in original. Citations omitted.) *Commonwealth* v. *Benson*, 453 Mass. 90, 95-96 (2009). "Provocation and 'cooling off' time must meet both a subjective and an objective standard." *Commonwealth* v. *Colon*, 449 Mass. 207, 220, cert. denied, 552 U.S. 1079 (2007).

Here the evidence in its light most favorable to the defendant indicates that his discovery of the victim with another man resulted in a fight with the other man, not with the victim. The defendant and the victim then drove to the defendant's apartment. Although the record is silent as to the length of time between the discovery that may have provoked the defendant and his

attack on the victim, there is no doubt that the attack on the victim did not occur suddenly after the defendant discovered her with the other man. That is, the attack on the victim was not the result of an immediate and emotional eruption on discovering her with another man. As a matter of law, intervening circumstances objectively indicate that the defendant thereafter engaged in ordinary activity. He had, in effect, "cooled off" sufficiently for purposes of provocation (heat of blood or sudden transport of passion) and regained a measure of self-control. Any lingering or festering anger he may have continued to harbor is not legally recognized as provocation.

The judge reasoned that the absence of any period of separation between the defendant and the victim negated any cooling off. This was error. It is not the separation that is determinative in the circumstances, but the "cooling off." See *Commonwealth v. Groome*, 435 Mass. 201, 221 (2001) (defendant not entitled to provocation instruction based on his sexual partner's disclosure that she had AIDS and probably transmitted virus to him, where sufficient "cooling off" was shown by his search for keys in preparation to leave, notwithstanding victim's persistent yelling insults). See also *Commonwealth v. Mercado*, 452 Mass. 662, 672 (2008); *Commonwealth v. Zagrodny*, 443 Mass. 93, 106 (2004). The evidence of "cooling off" was objective and sufficient to remove provocation as a mitigating factor on the question of malice.

We conclude that the judge abused her discretion in granting the defendant a new trial. The order granting the defendant's motion for a new trial is vacated. A new order shall enter denying the motion.

*So ordered.*