NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

11-P-729                                          Appeals Court

COMMONWEALTH  vs.  QUINCY BUTLER.

No. 11-P-729.

Suffolk.     November 9, 2015. - November 4, 2016.

Present:  Cypher, Trainor, & Rubin, JJ.


Homicide.  Constitutional Law, Jury.  Jury and Jurors.
     Practice, Criminal, Challenge to jurors, Jury and jurors,
     Capital case, Argument by prosecutor, Witness, Conduct of
     prosecutor.  Evidence, Argument by prosecutor, Cross-
     examination, Credibility of witness.  Witness, Cross-
     examination, Credibility.  Perjury.


     Indictments found and returned in the Superior Court
Department on May 4, 2004.

     The cases were tried before Patrick F. Brady, J.


     John M. Thompson for the defendant.
     Cailin M. Campbell, Assistant District Attorney (Patrick M.
Haggan, Assistant District Attorney, with her) for the
Commonwealth.


     CYPHER, J.  The defendant, Quincy Butler, appeals from his

convictions of murder in the second degree (G. L. c. 265, § 1),

and eight related offenses.[1]  The defendant was tried with a codefendant, William Wood, on a theory of joint venture for crimes committed in the course of a botched kidnapping and robbery attempt.[2]  Wood was convicted of murder in the first degree and various other charges.[3]  He appealed his convictions to the Supreme Judicial Court which found no reversible error and found no reason to reduce or reverse the conviction of murder in the first degree pursuant to its authority under G. L. c. 278, § 33E.[4]  See Commonwealth v. Wood, 469 Mass. 266 (2014).

---

[1] The defendant was also convicted of armed carjacking, in violation of G. L. c. 265, § 21A; two counts of kidnapping, in violation of G. L. c. 265, § 26; armed home invasion, in violation of G. L. c. 265, § 18C; two counts of armed robbery, in violation of G. L. c. 265, § 17; assault and battery by means of a dangerous weapon, in violation of G. L. c. 265, § 15A(b); larceny of a motor vehicle, in violation of G. L. c. 266, § 28(a); and possession of a firearm without a license, in violation of G. L. c. 265, § 10(a).  The armed home invasion conviction was subsequently dismissed as duplicative.

[2] There were four trials, two of which ended in mistrials when the jury were unable to reach a unanimous verdict.  A third trial ended in a mistrial because the presiding judge became ill during the trial.  Commonwealth v. Wood, 469 Mass. 266, 268 (2014).

[3] Wood was also convicted of armed carjacking, two counts of kidnapping, armed home invasion, and larceny of a motor vehicle.  His convictions on two counts of armed robbery were dismissed as duplicative by the judge but were reinstated by the Supreme Judicial Court.  Wood was acquitted of assault and battery by means of a dangerous weapon.  Wood, 469 Mass. at 268 & n.3.

[4] Wood argued, in his appeal, that if he and the defendant were both guilty of armed robbery as joint venturers, satisfying the predicate felony for felony murder in the first degree, the defendant should also have been convicted of murder in the first

On appeal, the defendant argues that he was deprived of equal protection and due process because the prosecutor engaged in racial and gender discrimination during jury empanelment. Specifically, he claims that the prosecutor attempted to select jurors who resembled the victim, a white female, and to avoid jurors who resembled the defendants, African American men. The defendant also argues several other issues, some of which were raised by Wood and reviewed and rejected by the Supreme Judicial Court in Wood, supra.[5] We affirm.

The Supreme Judicial Court thoroughly explicated the facts of the case in Wood, supra. We will address relevant facts where necessary.

Discussion. 1. Jury empanelment. "Article 12 of the Massachusetts Declaration of Rights proscribes the use of peremptory challenges 'to exclude prospective jurors solely by virtue of their membership in, or affiliation with, particular, defined groupings in the community.'" Commonwealth v. Smith, 450 Mass. 395, 405 (2008), quoting from Commonwealth v. Soares, 377 Mass. 461, 486, cert. denied, 444 U.S. 881 (1979). "Peremptory challenges are presumed to be proper." Commonwealth

degree. The Supreme Judicial Court noted that "[t]o be sure, the jury could have so found. However, the jury have the inherent power to enter into compromises in reaching their verdict." Wood, 469 Mass. at 294.

[5] The jury empanelment issue was not raised in Wood.

v. Maldonado, 439 Mass. 460, 463 (2003). However, that presumption may be rebutted by showing that "(1) there is a pattern of excluding members of a discrete group and (2) it is likely that individuals are being excluded solely on the basis of their membership" in that group. Ibid., quoting from Commonwealth v. Garrey, 436 Mass. 422, 428 (2002). "A single peremptory challenge can constitute a prima facie showing that rebuts the presumption of proper use." Commonwealth v. Curtiss, 424 Mass. 78, 79 (1997).

When the question of an improper use of a peremptory challenge is raised, the judge must make an initial finding as to whether the opposing party has made a prima facie showing that the use of the challenge was improper. Maldonado, 439 Mass. at 463, citing Commonwealth v. Burnett, 418 Mass. 769, 771 (1994). See Commonwealth v. Lacoy, 90 Mass. App. Ct. 427, 431 (2016). We do not disturb a judge's finding regarding whether a permissible ground for a peremptory challenge exists unless the judge abused his or her discretion. See Commonwealth v. Rodriguez, 431 Mass. 804, 811 (2000); Commonwealth v. Issa, 466 Mass. 1, 9-11 (2013). When reviewing such a claim we consider the totality of the circumstances presented to the judge, including the composition of the venire, the composition of the jury, the previous use of peremptory challenges, and other possible reasons that the juror could have been excluded. See

Commonwealth v. LeClair, 429 Mass. 313, 321 (1999) (composition of final deliberating panel); Commonwealth v. Issa, supra.

If the judge determines that the opposing party has established a prima facie case that the challenge was used for a discriminatory purpose, the burden shifts to the party seeking to exercise the challenge to provide a permissible explanation for that challenge. The judge must then determine whether the reason provided is genuine. See Maldonado, 439 Mass. at 463-464, and cases cited.

The jury empanelment for the trial in this case occurred over two days. At the outset of empanelment, defense counsel objected to the "numbering system" and to the "strike method" and order in which the jurors were being selected. He objected, in part, as follows:

> "I would note that for the first twenty-five jurors only five are males, so that means we're down to four to one during the first twenty-five. The second set of twenty-six, nineteen are females and seven are males. It's only when we get to the last twenty-four that we see what looks to be close to a 49 to 51 percent.

> "In other words, Mr. Butler is being asked to pick a jury where the first, over first fifty potential jurors are predominantly, close to 70 percent female. And I would suggest, and I object on his behalf, but I suggest that is not a fair representation or cross section."

The defendant has not demonstrated that any alleged underrepresentation in the venire was caused by systematic

exclusion of a distinctive group.[6]  See Commonwealth v. Leitzsey, 421 Mass. 694, 700 (1996), quoting from Duren v. Missouri, 439 U.S. 357, 364 (1979), and citing Taylor v. Louisiana, 419 U.S. 522, 531 (1975), and Commonwealth v. Pope, 392 Mass. 493, 500 (1984) ("[T]o prove that a petit jury selection process infringes a defendant's constitutional right to be tried by a jury representative of a fair cross section of the community, the defendant must show 'that the group alleged to be excluded is a "distinctive group" in the community; . . . that the representation of this group in venires . . . is not fair and reasonable in relation to the number of such persons in the community; and . . . that this underrepresentation is due to systematic exclusion of the group in the jury-selection process'").  "[T]he procedure used in this Commonwealth to choose jury panels from lists of qualified jurors is random selection. . . .  Inevitably, some panels drawn by this method will fail to represent proportionately various groupings in the population."  Commonwealth v. Soares, 377 Mass. at 482.

The total number of prospective jurors in the venire was 130 persons, of whom forty-nine were men and eighty-one were women.  On the first day of empanelment, Wood and the defendant

---

[6] Indeed, it is unclear from the argument on appeal and a review of the trial transcript whether the defendant considered all men or only African American men to be underrepresented.

challenged fourteen females, who were excused from the group that the judge had found to be impartial. Wood and the defendant also challenged two males who had been found to be impartial, and the judge excused them.

The Commonwealth challenged and the judge excused four females and four males on the first day. The Commonwealth expressed a concern on one challenge about the juror's ability to serve because she was on summer break from college. The Commonwealth then challenged the juror and she was excused. Next, the Commonwealth challenged a male juror who was on summer break from college. The Commonwealth also challenged a young black male and explained that he should not have been found indifferent. The Commonwealth argued that because he had stated to the judge that he was only "ninety percent" (rather than one hundred percent) sure that he could be unbiased and that he felt that blacks were punished disproportionally to whites, he should not have been found to be indifferent. When the judge disagreed, the Commonwealth challenged the juror and the judge excused the juror. Compare Commonwealth v. Colon, 408 Mass. 419, 440-441 (1990). Upon the defendant's objection to the Commonwealth's challenge, the judge declared that there was no pattern of discrimination and therefore did not ask for an explanation for the challenge. In any event, the Commonwealth had just provided a detailed reason to the judge, prior to the

defendant's objection, regarding why it believed this particular juror should have been excused for cause. Day one of the jury selection concluded with three females being seated.

The defendant and Wood opened day two of the empanelment process by filing a motion for a mistrial on the grounds that they had made a prima facie case of discrimination. The judge denied the motion. The Commonwealth challenged and excused a female. Two females were then seated. The Commonwealth next challenged and excused a male, juror number 100. An objection was made based on gender discrimination and the judge declined to find a pattern of discrimination. The defendant then immediately challenged the next juror, a male. Two more males were then seated and the defendant then challenged and excused the next juror, a male. The Commonwealth then challenged a female. The defendant objected, arguing that the pool had too few minorities and that this was the third challenge of a minority based on race or ethnicity.[7] The judge declined to find a pattern of discrimination. Two males were then seated.

---

[7] As we noted in note 6, supra, it was unclear on the record and on appeal whether the focus of the defendant's objection to the venire was that it was comprised of too few men or only specifically two few African American men. It is also unclear whether the defendant's objections to the Commonwealth's exercise of its peremptory challenges included both race and gender.

The defendant and Wood objected, claiming that the venire had more females than males. The judge overruled the objection. At this point in the process, five females and four males had been seated.

The Commonwealth challenged and excused another male and, after objection, the judge again found no pattern of discrimination.[8] A female was then seated. Wood challenged and excused two females. A male was seated. The Commonwealth then challenged and excused a male. The defendant and Wood objected and the judge declined to find a pattern of discrimination.[9] The Commonwealth next challenged and excused a female student on summer break. Wood and the defendant objected, claiming that the female student had some percentage of African descent and although the judge agreed, he declined to find a pattern of discrimination.[10] A male and a female were then seated. Wood challenged the next female. The Commonwealth objected, arguing

_____

[8] Significantly, prior to challenging this male juror, the Commonwealth had passed on challenging six male jurors, four of whom were seated and two of whom were challenged by Wood. Compare LeClair, 429 Mass. at 321.

[9] The judge was able to observe the entire proceeding when determining whether there was a pattern of discrimination. The Commonwealth had just passed on challenging a male juror, and he was seated.

[10] The judge would have been aware of the Commonwealth's previously stated concerns about seating students on summer break when determining if a pattern of discrimination existed. Compare Colon, 408 Mass. at 440-441.

that nine of Wood's twelve challenges were to white females. The judge declined to find a pattern of discrimination and excused the juror. The Commonwealth challenged the next juror, a male, and no objection was made.[11] Wood and the defendant challenged and excused two more females. A male and two females were seated without challenge.

A total of sixteen jurors were empanelled -- nine females and seven males. Of the females, five were white, three were Hispanic, and one was black. Of the males, four were white and three were black.[12]

"A trial judge is in the best position to decide if a peremptory challenge appears improper and requires an explanation by the party exercising it." Commonwealth v. LeClair, 429 Mass. at 321. We do not substitute our judgment for that of the judge as to whether the presumption of proper peremptory challenge has been rebutted when there is support in the record for the judge's determination. See Commonwealth v. Colon, 408 Mass. at 440. Considering the totality of the prosecutor's challenges, including the defendant's objection to

_____

[11] This prospective juror taught at a school attached to a Department of Youth Services treatment facility.

[12] The Commonwealth used fifteen peremptory challenges consisting of four white, two black, and one Hispanic female and six white and two black males. Wood and the defendant used twenty-three peremptory challenges consisting of sixteen white, two black, and one Hispanic female and four white males.

almost every peremptory challenge the Commonwealth made to prospective male jurors coupled with the defendant's own challenges to prospective male jurors, the reasons expressed by the Commonwealth for challenging certain jurors, as well as the composition of the members of the jury, there was ample support for the judge to determine that the presumption of appropriate use of peremptory challenges had not been rebutted by the defendant.  The defendant has not established that the judge abused his discretion.  The defendant also did not establish that any particular group was underrepresented in the venire.

2.  The defendant's other issues.[13]  A number of the defendant's arguments before us were specifically addressed and rejected in Wood.  We think that, in general, the reasoning of

---

[13] The defendant was given leave to appeal the single justice's denial of his motion to file a Moffett brief, see Commonwealth v. Moffett, 383 Mass. 201 (1981), and the appeal was consolidated with the direct appeal.  The single justice did not abuse his discretion in denying the defendant's motion to file a Moffett brief.  There is no constitutional right to hybrid representation.  See Commonwealth v. Molino, 411 Mass. 149, 153 (1991) ("Hybrid representation is not prohibited; appointment of counsel in any hybrid situation is left to the discretion of the . . . judge").  "While a court may, in its discretion, permit a party to proceed in a hybrid manner, it is not obligated to do so."  Commonwealth v. LeBaron, 464 Mass. 1020, 1020 (2013), citing Molino, supra at 152-154.  Here, defense counsel filed a fifty-page brief on behalf of the defendant.  The parameters of Moffett were not complied with by the defendant, or his counsel, who submitted a detailed memorandum in support of the defendant's arguments in the Moffett brief.

the Supreme Judicial Court in rejecting Wood's identical

arguments applies here as well.[14]

    a.  Prosecutor's closing argument.  The defendant's first

argument concerning the prosecutor's statement in closing

regarding the relationship of the victim and one of the

witnesses is substantially the same as the argument already made

in Wood.  The Supreme Judicial Court, in Wood, noted that the

error was objected to, after which the judge instructed the jury

that they were to disregard the erroneous statement.  The

Supreme Judicial Court concluded that the error would not have

made a difference in the jury's conclusion.  The Supreme

Judicial Court also concluded that "[t]he prosecutor was

---

[14] Our concurring colleague notes that in addition, the
Supreme Judicial Court conducted a mandatory statutory G. L.
c. 278, § 33E, review of Wood's conviction of murder in the
first degree on the same record.  See Wood, 469 Mass. at 295.
The concurrence views this review as having a preclusive effect
regarding the Batson claim of constitutional error in this
appeal with respect to juror selection, see Batson v. Kentucky,
476 U.S. 79 (1986), because § 33E review is mandatory in all
appeals from convictions of murder in the first degree, and,
when conducting such § 33E statutory review, the Supreme
Judicial Court considers whether any unpreserved or unbriefed
error at trial has created a "substantial likelihood of a
miscarriage of justice."  Considering the defendant's zealous
advocacy regarding the alleged error in jury selection, it is
not likely that the Supreme Judicial Court overlooked this
point.  Concurrence, post at      .  Having no express
authority by the Supreme Judicial Court that we may, in some
circumstances, consider its § 33E review of a first degree
murder conviction as dispositive of a codefendant's appeal from
a conviction of murder in the second degree, we decline to
consider the question.

attempting to rebut defense counsel's argument that [the witness] was not credible and was motivated to lie to protect himself or the third-party killer.  The prosecutor properly responded by pointing out that [the witness] had no motive to lie and that he was nearly killed in the same assault. . . . [The witness] was exhaustively cross-examined, and defense counsel ably challenged his credibility throughout the trial." Wood, 469 Mass. at 286.

Next, the defendant complains that the prosecutor's closing argument was improper because he commented on the credibility of the defendant, and the judge erred in declining to give a requested curative instruction.

Here, the prosecutor attacked the defendant's credibility both by suggesting he was rehearsed, robotic, and acting during his testimony, and by comparing his testimony with that of two Commonwealth witnesses who the prosecutor suggested were more genuine and unrehearsed.  "The prosecution may properly attack the credibility of . . . [a] defendant, . . . and may ask the jury to compare the credibility of two opposing witnesses." Commonwealth v. Donovan, 422 Mass. 349, 357 (1996).  "Similarly, a prosecutor may argue in support of the credibility of witnesses based on their demeanor." Commonwealth v. Miles, 46 Mass. App. Ct. 216, 222 (1999).  The prosecutor referred to the cross-examination of the defendant to support his argument that

the defendant would be more believable if he had not been rehearsed and actually tried to remember what happened. During cross-examination the defendant admitted to reading over his testimony from two years earlier to prepare for his current testimony. See Commonwealth v. Freeman, 430 Mass. 111, 118-119 (1999) ("A prosecutor can address, in a closing argument, a witness's demeanor, motive for testifying, and believability, provided that such remarks are based on the evidence, or fair inferences drawn from it"). See generally Commonwealth v. Kozec, 399 Mass. 514, 521 (1987) ("not improper to make a factually based argument that, due to the demeanor, disclosed circumstances, and appearance of a witness, a particular witness should be believed or disbelieved"). The defendant took the stand and testified to his innocence, thus making his credibility a central issue in the case. The defendant's testimony and demeanor could be referred to in closing argument. See Donovan, supra; Miles, supra. There was no error in the prosecutor's arguing that the defendant was not credible.

Furthermore, where, as here, the prosecutor's questioning of the defendant's credibility during his closing argument was adequately grounded in the evidence at trial, the judge did not err in declining to give a curative instruction. See Commonwealth v. Carter, 475 Mass. 512, 521 (2016), quoting from Commonwealth v. Brewer, 472 Mass. 307, 315 (2015) ("While a

prosecutor may not vouch for the truthfulness of a witness's testimony, . . . we consistently have held that, where the credibility of a witness is an issue, counsel may 'argue from the evidence why a witness should be believed'" [citations omitted]). Moreover, the judge made it clear to the jury that closing arguments must always be distinguished from evidence and the jury themselves were the final arbiters of the facts and the sole judges of the credibility of the witnesses and the weight to be accorded to their testimony. See Carter, supra at 522 ("Even if there had been an appearance of impropriety in the statements, the judge carefully and clearly instructed the jury that closing arguments are not evidence and that they alone were tasked with determining credibility. These instructions offset any prejudice").

b. Evidentiary rulings and limitations on cross-examination. The defendant argues that the judge's evidentiary rulings and limitations on cross-examination were error and deprived him of his right to present a complete defense and cross-examine all adverse witnesses. Both Wood and the defendant objected to the judge's evidentiary rulings and the limitations on cross-examination. Wood made this identical argument in his appeal. The Supreme Judicial Court rejected the argument. "In a pretrial motion joined by [the defendant], [Wood] sought to introduce, through several witnesses and cross

examination, evidence intended to show that a third party . . . killed [the victim], as well as evidence that the police failed to investigate certain statements . . . . We discern no error in the judge's rulings excluding much of the proffered evidence."  Wood, 469 Mass. at 274.  The Supreme Judicial Court concluded that certain excluded evidence would have been cumulative of other admitted evidence.  Id. at 277.  The Supreme Judicial Court also concluded that "where the issue of an inadequate investigation was fairly before the jury, the defendant suffered no prejudice from the exclusion of the proffered evidence."  Id. at 278.

c.  Purported false testimony.  The defendant argues that the prosecutor knowingly used false evidence from two witnesses, which denied the defendant his opportunity for a fair trial. The Supreme Judicial Court, in Wood, however, specifically reviewed the testimony of these two witnesses both before the grand jury and at trial.  The Supreme Judicial Court concluded that there was no knowing use of false testimony.  "Given that both witnesses' versions of the core facts of the case remained essentially the same at all proceedings, and given that their testimony corroborated each other's stories, the prosecution did not knowingly elicit perjury. . . .  The defendant's due process rights were not violated where the facts that went to the heart of the case remained essentially unchanged throughout the

trials."  469 Mass. at 288-289.  Neither Wood nor the defendant

had objected to the evidence on this basis.[15]

<u>Judgments affirmed</u>.

<u>Order of the single justice
    denying motion to file
    Moffett brief affirmed</u>.

---

[15] Nor is there merit in the defendant's argument that these witnesses were coached, and that, therefore, it was error for the prosecutor to argue otherwise in his closing.

TRAINOR, J. (concurring).  I concur with the majority opinion in every respect but would add that the Supreme Judicial Court conducted a mandatory § 33E review of codefendant William Wood's conviction of murder in the first degree.  See Commonwealth v. Wood, 469 Mass. 266, 295 (2014).  The codefendants, at trial, conducted their defense in unison.  They joined in each other's objections and each other's arguments, and as a result, I believe that the G. L. c. 278, § 33E, review should have preclusive effect on the Batson[1] claim of constitutional error made by defendant Butler in this appeal.

Generally, when a party appeals from a ruling or a decision of a trial court or other adjudicative body, our standard of review is determined by whether an objection was preserved below and other appropriate circumstances related to the alleged error.  Direct appeals from convictions of murder in the first degree however are handled differently because the Supreme Judicial Court has a statutory duty under G. L. c. 278, § 33E, to review the entire case, whether or not errors were preserved at trial or briefed on appeal, in order to guarantee that the conviction was not the result of a miscarriage of justice. "Under § 33E, [the Supreme Judicial Court] review[s] the entire record of a conviction of murder in the first degree, examining

---

[1] See Batson v. Kentucky, 476 U.S. 79 (1986).

both the law and the evidence, considering the issues raised on appeal, the issues raised through objections at trial, and the issues that reasonably should have been raised on appeal and objected to at trial, to ensure that there has not been a miscarriage of justice" (emphasis added).  Commonwealth v. Johnson, 461 Mass. 1, 6 (2011).  The Supreme Judicial Court has further elaborated on this duty by stating, "We are empowered under G. L. c. 278, § 33E, to consider questions raised by the defendant for the first time on appeal, or even to address issues not raised by the parties, but discovered as a result of our own independent review of the entire record. . . .  This uniquely thorough review of first degree murder convictions is warranted by the infamy of the crime and the severity of its consequences."  Dickerson v. Attorney Gen., 396 Mass. 740, 744 (1986).

When conducting its § 33E statutory review, the Supreme Judicial Court looks for whether any error unpreserved at trial or unbriefed on appeal has created a "substantial likelihood of a miscarriage of justice."[2]  See, e.g., Commonwealth v. Wright, 411 Mass. 678, 682 (1992); Commonwealth v. Ruddock, 428 Mass. 288, 292 n.3 (1998).  While the court will use the "substantial

---

[2] The substantial likelihood standard is "more forgiving to a defendant" than is the substantial risk of a miscarriage of justice standard.  Commonwealth v. Smith, 460 Mass. 318, 321 n.2 (2011).

likelihood" standard on issues that were either not preserved at trial or not included in an appellate brief, when issues were properly preserved at trial and raised on appeal, the court will apply the standard of review typically used for preserved claims in criminal cases.

Here, both the defendant and Wood carefully laid a foundation for appeal on the issue of racial and gender discrimination in both the venire pool and the juror selection process.  The defendant and Wood objected to the prosecutor's use of peremptory challenges and argued that the challenges were based on either race or gender discrimination.  The defendant and Wood took exception to the judge's declining to sustain their objections and his declining to find a pattern of improper challenges pursuant to Batson v. Kentucky, 476 U.S. 79, 97 (1986), and J.E.B. v. Alabama, 511 U.S. 127, 128-129 (1994).  Both the defendant and Wood moved for a mistrial on the second day of jury selection.  Inexplicably, Wood did not include this issue, even though well preserved at trial, in his appellate brief to the Supreme Judicial Court.  Now, the defendant contends that even if the Supreme Judicial Court reviewed the Batson issue, it would have used the likelihood of a miscarriage of justice standard of review because Wood did not include the claim in his appellate brief.  We on the other hand, according to this argument, are required to use a different and stricter

standard of review because the defendant has argued the Batson issue in his appellate brief. Under different circumstances this could be a legitimate observation, and create an unfortunate anomaly in our system of justice, but it does not here.

The defendant relies on Commonwealth v. Morganti, 467 Mass. 96, cert. denied, 135 S. Ct. 356 (2014), for his argument that Wood had waived any claim of constitutional error by not including the claim in his direct appeal. The defendant argues that the Supreme Judicial Court therefore could only have reviewed this potential error under § 33E and the substantial likelihood of a miscarriage of justice standard. Morganti held that while "[i]t is well settled that the violation of a defendant's Sixth Amendment right to a public trial is structural error requiring reversal . . . even structural error is subject to the doctrine of waiver." Id. at 101-102 (quotation omitted). The defense counsel in Morganti was aware that the court room had been closed to the public in order to facilitate jury empanelment and did not object. The Supreme Judicial Court concluded that the defendant had waived his right to a public trial for that portion of the proceedings because defense counsel was aware of the closing and chose not to object. Id. at 102. That is not the situation we face here. Defense counsel for both the defendant and Wood made great

effort to preserve any potential error.  Wood objected to the venire panel, moved for a mistrial, objected on the basis of racial discrimination, objected on the basis of gender discrimination, and renewed each of the objections based on discrimination.  The defendant joined Wood in each of these objections and objected alone only once to a juror challenge by the Commonwealth.

The defendant would have us view the <u>Wood</u> decision as considering the <u>Batson</u> claim under the "substantial likelihood of a miscarriage of justice" standard of review, not because defense counsel waived the claimed error at trial but because appellate counsel failed to preserve the objection on appeal.[3]  In this unique circumstance, I believe this reasoning to be incorrect.  "When constitutional error calls into question the objectivity of those charged with bringing a defendant to judgment, a reviewing court can neither indulge a presumption of regularity nor evaluate the resulting harm. . . .  [W]hen a petit jury has been selected upon improper criteria . . . we have required reversal of the conviction because the effect of the violation cannot be ascertained."  <u>Vasquez</u> v. <u>Hillery</u>, 474 U.S. 254, 263 (1986).  Our Supreme Judicial Court, long before the holding in <u>Batson</u>, prohibited the use of peremptory

---

[3] The claimed errors were objected to at trial on numerous occasions.

challenges to exclude prospective jurors solely on the basis of their membership in, or affiliation with, defined groupings in the community.  The court held that "there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error.  The right to be tried by an impartial jury of peers is one such right." Commonwealth v. Soares, 377 Mass. 461, 492, cert. denied, 444 U.S. 881 (1979), quoting from Commonwealth v. Gilday, 367 Mass. 474, 499 n.3 (1975).

Whether this species of constitutional error can ever be waived remains to be determined.[4]  Here, however, the alleged error clearly was not waived and, if substantiated, could never be treated as harmless, never mind only creating the possibility of a likelihood of a miscarriage of justice.  That standard of review is simply inappropriate for reviewing this kind of alleged constitutional error.  If the alleged error existed, after being so clearly highlighted in the record of the trial,

---

[4] Federal Circuit Courts of Appeal have determined that "intentional discrimination on the basis of race in jury selection is structural error."  Winston v. Boatwright, 649 F.3d 618, 628 (7th Cir. 2011).  Compare Vasquez v. Hillery, 474 U.S. at 263 (grand jury selection); Arizona v. Fulminante, 499 U.S. 279, 309-310 (1991) (Rehnquist, C.J., writing for a majority) (other structural errors).  While this question has not been decided yet in Massachusetts, the requirement of an impartial jury is fundamental to our concept of a fair trial.  I do not believe that a § 33E review could have considered the issue to have been waived simply because it was not included in an appellate argument after being so extensively argued at trial.

the court in <u>Wood</u> would have been required to reverse Wood's conviction.

I conclude then that the Supreme Judicial Court's holding in <u>Wood</u> included a determination that there was no error and no basis to these constitutional claims made by both the defendant and Wood at trial and by the defendant in this appeal. See <u>Wood</u>, 469 Mass. at 295 ("We have reviewed the record in accordance with G. L. c. 278, § 33E, to determine whether there is any basis to set aside or reduce the verdict of murder in the first degree, <u>regardless</u> of whether such grounds were <u>raised on appeal</u>. We find no such reason, and we decline to exercise our powers under the statute"). (Emphasis added.)

RUBIN, J. (dissenting). The court majority errs in concluding that the defendant failed to make out a prima facie claim of gender discrimination in the Commonwealth's use of its peremptory challenges. Further, to the extent it intimates that the Supreme Judicial Court's failure to address the Batson claim in the case of Commonwealth v. Wood, 469 Mass. 266 (2014), the appeal of Butler's codefendant, in which it was not raised or addressed, might have preclusive effect here because of G. L. c. 278, § 33E -- a view fleshed out by my concurring colleague -- it is also in error, an error that, if raised to the level of a holding, would have broad implications for the criminal law. I therefore respectfully dissent.[1]

1. Batson claim. The defendant raises a claim that he made out a prima facie case of a violation on the basis of

---

[1] The defendant testified on cross-examination that he had reviewed his own prior testimony at the direction of counsel. In closing, the prosecutor said, "Did you find [the defendants'] testimony credible or did you find it rehearsed? Did you find it prepared? Did you find it very informed, having read their transcripts, knowing what questions I was going to ask them? Keep that in mind, ladies and gentlemen, when you look at their testimony." There was no objection.

Though the majority does not address it, in the absence of any evidence of coaching, this aspect of the prosecutor's closing was error. See Commonwealth v. Beauchamp, 424 Mass. 682, 691 (1997) ("the prosecutor may not elicit evidence of . . . the discussions the defendant had with his attorney to argue that these were evidence that the defendant fabricated his story"). Nonetheless, because I conclude that the error did not create a substantial risk of a miscarriage of justice, I do not think it requires reversal.

gender under Batson v. Kentucky, 476 U.S. 79 (1986). See J.E.B. v. Alabama, 511 U.S. 127 (1994) (extending Batson to cover discrimination on the basis of gender). That is the only claim about empanelment made here by the defendant. The defendant does not argue that there was a fair cross-section problem, so the majority's conclusion asserted at the outset of its opinion that there was no such problem is irrelevant to the defendant's appeal.

The Batson claim is not a complicated one. After thirty-one jurors had been found indifferent during jury selection, the defendant interposed a Batson objection for discrimination on the basis of gender. At that point, the prosecutor had struck five of the twenty-four women found indifferent, or 20.83 percent. During the same period he had struck five of the seven men found indifferent, or 71.43 percent.

The burden of making out a prima facie case is not "a terribly weighty one." Commonwealth v. Maldonado, 439 Mass. 460, 463 n.4 (2003). Indeed, the "challenge of a single prospective juror within a protected class could, in some circumstances, constitute a prima facie case of impropriety." Commonwealth v. Fryar, 414 Mass. 732, 738 (1993), S.C., 425 Mass. 237, cert. denied, 522 U.S. 1033 (1997). The pattern of strikes here suffices to raise an inference that the prosecutor was using peremptory challenges to exclude individuals from the

jury because of their sex.  The defendant is thus entitled at least to a remand to the trial court to allow the Commonwealth to explain its challenges.  See Commonwealth v. Mathews, 31 Mass. App. Ct. 564, 571 n.6 (1991) (stating that, where the judge had not adequately probed the prosecutor's nondiscriminatory reasons for exercising peremptory strikes, "we could remand the case to the trial judge for additional findings").[2]

The court majority concludes that no prima facie case of discrimination was made out.  Its analysis, however, rests on three different errors.

---

[2] See Sanchez v. Roden, 753 F.3d 279, 308 (1st Cir. 2014) (remanding case for evidentiary hearing after finding prima facie case of Batson violation).  See also United States v. Battle, 836 F.2d 1084, 1086 (8th Cir. 1987) (same); United States v. Horsley, 864 F.2d 1543, 1546 (11th Cir. 1989) (same); Jones v. West, 555 F.3d 90, 102 (2d Cir. 2009) (same).  The alternative would be to order a new trial.  See Commonwealth v. Long, 419 Mass. 798, 807 (1995).  See also Commonwealth v. Issa, 466 Mass. 1, 11 n.14 (2013) ("Where, as here, a judge fails to find a prima facie case or otherwise require the prosecutor to provide an explanation, the record on appeal includes no explanation of the prosecutor's reasons for the challenge, the defendant is not given an opportunity to reply to the explanation, and the judge does not make the required findings as to the adequacy and genuineness of the prosecutor's explanation.  Therefore, where a judge abuses his or her discretion by failing to find a prima facie case, the error is unlikely to be harmless. . . .  Consequently, when a defendant claims that a prosecutor's peremptory challenge of a prospective juror is motivated by discriminatory intent, we urge judges to think long and hard before they decide to require no explanation from the prosecutor for the challenge and make no findings of fact").

First, the majority examines both the actions of the Commonwealth after the point of the objection, <u>ante</u> at ____, and the final composition of the jury, <u>ante</u> at ____. Neither was known at the time of the objection, and thus neither could have played any role in the decision under review, which is the judge's determination that the defendant failed to make out a prima facie case of gender discrimination.

The objection at issue, concerning juror number 100, occurred on the second day of trial after the Commonwealth used its first peremptory challenge of the day to excuse a male juror. This is described in the majority opinion, <u>ante</u> at ____. The actions of the parties during empanelment after that point are, of course, irrelevant. The same is true of the final composition of the jury. To the extent our cases have examined the composition of the jury in determining whether a prima facie case of discrimination has been made out, they have looked only to the composition of the jury <u>at the time of the objection</u>.[3] See <u>Commonwealth</u> v. <u>Sanchez</u>, 79 Mass. App. Ct. 189, 190-192 (2011). <u>Commonwealth</u> v. <u>LeClair</u>, 429 Mass. 313, 321 (1999), cited by the majority, is actually an example of this;

---

[3] We note that on Federal habeas review, the United States Court of Appeals for the First Circuit recently deemed this court's overreliance on the composition of the jury at the time of the objection in that very case "objectively unreasonable in light of clearly established federal law." <u>Sanchez</u> v. <u>Roden</u>, 753 F.3d at 300.

the court there cites the final composition of the jury not in support of its affirmance of the judge's determination that there was no prima facie case of discrimination, but only as evidence that the defendant received a trial before "a fair and impartial jury of his peers," i.e., that the fair cross-section requirement was met, a different matter and, again, one not raised here.  Issa, which the majority also cites, does not discuss the final composition of the jury at all.  See Commonwealth v. Issa, 466 Mass. 1, 10-11 (2013).  Were we to consider the composition of the jury at the time of the objection, it would undermine the majority's argument.  At that time, the jury contained five women and no men.

Neither subsequent actions nor the final composition of the jury can be relevant to whether a defendant made out a prima facie case.  Each individual juror has the right not to be struck for a discriminatory reason.  See Foster v. Chatman, 136 S. Ct. 1737, 1747 (2016) ("The Constitution forbids striking even a single prospective juror for a discriminatory purpose" [quotation omitted]).  Thus, a constitutional violation can occur even if the final jury contains members of the group that was allegedly subjected to discriminatory strikes.  See Alvarado v. United States, 497 U.S. 543, 544 (1990) (Vacating and remanding where United States conceded that "[t]he Court of Appeals erred in holding that as long as the petit jury chosen

satisfied the Sixth Amendment's fair-cross-section concept, it need not inquire into the claim that the prosecution had stricken jurors on purely racial grounds").

To the extent the majority's discursive discussion of the facts might create an appearance of evenhandedness between the parties, that appearance is misleading.  The Commonwealth had, at the time of the objection to juror number 100, struck an equal number of men and women, five of each.  But that was over 70 percent of the men, and only about 20 percent of the women.  Likewise, the defendant's own use of peremptories described in the majority opinion is irrelevant.  Because two wrongs don't make a right in this context, nothing one party can do in its use of such challenges licenses the other party to use its own challenges in a discriminatory manner.

Second, the majority speculates about valid reasons for striking some jurors when, because of the trial judge's error, the Commonwealth was never asked to and never did put forth any nondiscriminatory reason for any of its peremptory challenges.  See ante at        ,          note 10.  We may not speculate about possible nondiscriminatory reasons for peremptory strikes that are not apparent from the record.  See Johnson v. California, 545 U.S. 162, 172 (2005) ("The Batson framework is designed to produce actual answers to suspicions and inferences that discrimination may have infected the jury selection process");

_Williams_ v. _Lousiana_, 136 S. Ct. 2156, 2156-2157 (2016)
(Ginsburg, J., concurring in the decision to grant, vacate, and
remand, with whom Breyer, Sotomayor, and Kagan, JJ. join),
quoting from _Johnson_ v. _California_, _supra_ at 173 (It is
"improper to 'rel[y] on judicial speculation to resolve
plausible claims of discrimination'").  In this case, the
prosecutor did argue during voir dire that one of the male
potential jurors should have been dismissed for cause because of
his views on race, a significant concern of the trial judge in
this case, and so that argument may play some role in this
court's analysis.  See _Batson_ v. _Kentucky_, _supra_ at 97 ("[T]he
prosecutor's questions and statements during voir dire
examination and in exercising his challenges may support or
refute an inference of discriminatory purpose").  See also
_Commonwealth_ v. _Issa_, 466 Mass. at 11 (relying on
nondiscriminatory reasons for a strike that were apparent in the
voir dire record).  However, the majority is simply mistaken in
stating that the Commonwealth ever expressed a particular
concern about the jurors who were on summer break from college.
By the time of the relevant objection, the judge had asked four
jurors[4] whether they were on summer break from college.  The
prosecutor struck all four jurors, two women and two men,

---

[4] Including the man whom the prosecutor argued should be
dismissed for cause.

without mentioning the fact that they were on summer break. Even if this court is willing to conclude from the silent record that this nongender factor explains these four strikes, the prosecutor still struck three out of five (60 percent) of the remaining men and three out of twenty-two (13.6 percent) of the remaining women.

Third, the majority fails to engage in one of the most important analyses in determining whether a strike was discriminatory:  comparison of similarly situated male and female jurors.  See Miller-El v. Dretke, 545 U.S. 231, 241 (2005) ("More powerful than the[] bare statistics, however, are side-by-side comparisons of some black venire panelists who were struck and white panelists allowed to serve"); Sanchez v. Roden, 753 F.3d 279, 302 (1st Cir. 2014), quoting from Aspen v. Bissonnette, 480 F.3d 571, 577 (1st Cir. 2007) ("[W]e take into account 'whether similarly situated jurors from outside the allegedly targeted group were permitted to serve' on the jury in ruling on a Batson challenge").  Here, for example, the very first potential juror questioned, juror number 1, was a female lawyer who had worked at a large firm, was married to another lawyer who worked at a large firm, and was going to start working for a Justice of the Supreme Judicial Court in four months.  The Commonwealth did not exercise a peremptory challenge.  The twenty-second and twenty-third potential jurors

questioned, juror number 79 and juror number 84, were both male lawyers, one of whom specialized in medical malpractice and the other of whom specialized in trademark law.  Juror number 84, like juror number 1, was married to a lawyer.  The Commonwealth used peremptory strikes on both male lawyers.  At the time the prosecutor chose not to strike the female lawyer, he had sixteen peremptory strikes remaining and no jurors had been seated.  At the time the prosecutor chose to strike the two male lawyers back-to-back, he had ten peremptory strikes remaining and only three jurors had been seated.[5]

The statistical evidence alone establishes a prima facie case of discrimination.  Additional evidence apparent from the record, including a side-by-side comparison of similarly situated jurors, supports it.  The majority thus errs in concluding that the facts it raises, which have only limited relevance, establish that the judge did not abuse his discretion.  I would not at this point in the proceedings reverse the judgment here, but I would remand the case to allow the Commonwealth to present a gender-neutral explanation for its

_____

[5] In addition, the record on appeal contains no relevant information about juror number 100, the man whose strike prompted the gender-based Batson objection.  The prosecutor failed to strike a number of female jurors about whom there is also little information in the record (e.g., jurors number 15, 25, 53, 88, 96, and 97).

peremptory challenges to the male prospective jurors.  See

Sanchez, 753 F.3d at 308.

2.  The preclusive effect of § 33E review in the

codefendant's case.  The codefendant, Wood, did not raise a

Batson claim in his direct appeal to the Supreme Judicial Court,

see Commonwealth v. Wood, 469 Mass. 266 (2014), despite

litigating the issue in the trial court.  Although the

Commonwealth does not contend that we are precluded by Wood from

addressing the Batson claim here,[6] the court majority, while

ultimately reserving the question, may be read to imply that if

we could be certain the Supreme Judicial Court had not

"overlooked" the Batson issue in its mandatory G. L. c. 278, §

33E, review of Wood's first-degree murder case for a substantial

likelihood of a miscarriage of justice, it might make sense that

the court's silence on the issue would have preclusive effect,

barring the defendant from raising the claim here, even though

it was never raised on appeal by his codefendant.  See ante

at       note 14.  That Wood's silence on this issue has

preclusive effect is the thrust of the opinion of my concurring

colleague.

_____

[6] The issue was raised sua sponte by the panel at oral
argument.  At his request, the defendant was permitted to submit
a postargument letter responding to the panel's questions.  The
Commonwealth did not submit a postargument letter on this
subject.

Any such holding would affect the way in which we interpret many, and maybe most, of the Supreme Judicial Court's myriad decisions in first-degree murder cases, potentially affecting all manner of questions of criminal law. Although I do not fault the logic of my concurring colleague, I do not believe the Supreme Judicial Court intends its silence on an issue in a case like Wood to be given this weight. Indeed, I believe it would violate the fundamental principles of our adversary legal system to accord such precedential weight to the Supreme Judicial Court's § 33E review of a claim neither raised by a defendant nor explicitly addressed by that court.

The Anglo-American system of law is an adversary one. "Ours is the accusatorial as opposed to the inquisitorial system. Such has been the characteristic of Anglo-American criminal justice since it freed itself from practices borrowed by the Star Chamber from the Continent . . . ." Watts v. Indiana, 338 U.S. 49, 54 (1949) (plurality opinion of Frankfurter, J.). "[W]ithin the framework of our adversary system, the adjudicatory process is most securely founded when it is exercised under the impact of a lively conflict between antagonistic demands, actively pressed, which make resolution of the controverted issue a practical necessity." Poe v. Ullman, 367 U.S. 497, 503 (1961). Opposing parties joining issues and providing argument to the court are aspects of adjudication

under our judicial system essential both to identifying issues that require adjudication and to ensuring they are determined appropriately.  This is one of the reasons arguments not made before our appellate courts are ordinarily deemed waived, even if they have been raised below.  See, e.g., Commonwealth v. Stevenson, 46 Mass. App. Ct. 506, 507 n.3 (1999) ("Although [one of two codefendants] also raised this issue at trial, he has not raised it on appeal; therefore, he has waived his claims regarding this issue").  Indeed, the absence of argument is one of the reasons the Supreme Judicial Court's advisory opinions issued under Part II, c. 3, art. 2 of the Massachusetts Constitution, as amended by art. 85 of the Amendments, are not given stare decisis effect.  See, e.g., Commonwealth v. Welosky, 276 Mass. 398, 400 (1931) ("It has been uniformly and many times held that such opinions, although necessarily the result of judicial examination and deliberation, are advisory in nature, given by the justices as individuals in their capacity as constitutional advisers of the other departments of government and without the aid of arguments, are not adjudications by the court, and do not fall within the doctrine of stare decisis. When the same questions are raised in litigation, the justices then composing the court are bound sedulously to guard against any influence flowing from the previous consideration, to examine the subject anew in the light of arguments presented by

parties without reliance upon the views theretofore expressed, and to give the case the most painstaking and impartial study and determination that an adequate appreciation of judicial duty can impel") (Emphasis added).

The Supreme Judicial Court's § 33E review, mandated by the Legislature, is an exception to the ordinary rules of our adversary adjudicative system.  Section 33E, as appearing in St. 1979, c. 346, § 2, provides, "In a capital case . . . the entry in the supreme judicial court shall transfer to that court the whole case for its consideration of the law and the evidence. Upon such consideration the court may, if satisfied that the verdict was against the law or the weight of the evidence, or because of newly discovered evidence, or for any other reason that justice may require (a) order a new trial or (b) direct the entry of a verdict of a lesser degree of guilt, and remand the case to the superior court for the imposition of sentence." Section 33E review does not follow the adversary model.  It calls upon the court -- not the zealous advocate for the defendant -- to review the record with an eye toward identifying potential errors, and, without adversarial briefing, to decide any questions it finds.  It does not involve full-blown litigation.  It is designed to serve as a backstop in the case of first degree murder convictions in light of "the infamy of the crime and the severity of its consequences."  Commonwealth

v. Angiulo, 415 Mass. 502, 509 (1993), quoting from Dickerson v. Attorney Gen., 396 Mass. 740, 744 (1986).

It is true that the Supreme Judicial Court utilizes a standard of review (asking whether there has been a "substantial likelihood of a miscarriage of justice") that is at least formally slightly more favorable to the defendant than we do when we review convictions for unpreserved claims of error ("substantial risk of a miscarriage of justice"). See Commonwealth v. Smith, 460 Mass. 318, 321 n.2 (2011) ("The substantial likelihood of a miscarriage of justice standard that is associated with plenary review under G. L. c. 278, § 33E . . . is more forgiving to a defendant than the substantial risk standard applicable in other criminal cases") (emphasis omitted). Nonetheless, to treat a decision of the Supreme Judicial Court on § 33E review as binding precedent on all questions that might have been presented in all § 33E cases would ignore the reality that the determination was not the result of an adversary proceeding. Where the issue is one that was neither raised by any party, nor mentioned by the court, we cannot tell whether the court's silence indicates that the issue was seen, evaluated, and found meritless, or missed altogether. Treating that silence as binding precedent on all issues not raised in a case would introduce a fundamental unfairness into our proceedings, particularly where what is at issue is an error

that can "never be treated as harmless," see <u>ante</u> at 6 (Trainor, J., concurring), the very characteristic that the concurring opinion concludes renders the defendant's claim unreviewable here.

A judge engaged in review of the record is not a lawyer for one of the parties charged with his or her zealous representation. In a case like this, in the absence of briefing by the codefendant's lawyer, it is not realistic to assume that a judge reviewing the trial record will necessarily find every colorable error of law, nor that he or she will necessarily be completely familiar with each legal issue presented.

Thus, for example, less than three months prior to the Supreme Judicial Court's decision in <u>Wood</u>, the United States Court of Appeals for the First Circuit in <u>Sanchez</u> v. <u>Roden</u>, <u>supra</u>, granted a State prisoner an evidentiary hearing on his <u>Batson</u> claim and concluded that the courts of our Commonwealth had been utilizing a threshold for determining whether an inference of discrimination arises with respect to peremptory challenges that was, as a matter of Federal law, too high. See 753 F.3d at 300, 308. The <u>Sanchez</u> opinion is persuasive, and though our courts are not formally bound by it, it does appear to reflect the appropriate standard.

Yet there is no reason to believe, even if they noticed the <u>Batson</u> issue here, that the justices of the Supreme Judicial

Court were even aware of this then-recent decision at the time they engaged in their review under § 33E. Although it had been published, no lawyer put it before the court for its consideration.

What Justice Jackson said of the members of the high Court on which he sat could also be said of the justices of our Supreme Judicial Court with respect to the law of our Commonwealth: The justices are "not final because [they] are infallible, but [they] are infallible only because [they] are final." Brown v. Allen, 344 U.S. 443, 540 (1953) (Jackson, J., concurring in result).

Yet not even the talented justices of our Supreme Judicial Court are omniscient. And, in a circumstance such as this, to hold that their failure sua sponte to find a legal error and to reverse a judgment should be binding on another criminal defendant whose counsel has identified that error and has presented to a reviewing court his client's claim along with supporting authority would be fundamentally unfair.

Further, I think that it would be inconsistent with the role of the Appeals Court, which was in fact created to assist the Supreme Judicial Court in light of that court's heavy caseload. Although further guidance from the Supreme Judicial Court is necessary on this question, I find it difficult to believe that it intends its determinations under § 33E of an

issue not presented to it, and which it has left unaddressed, to foreclose our consideration of that issue in the first instance when it is properly raised.  To the extent, if any, the majority intimates that it does, I respectfully dissent.